KELLY K.[1] & others[2] *vs.* TOWN OF FRAMINGHAM &
others.[3]

No. 93-P-115.

Middlesex. March 10, 1994. - May 16, 1994.

Present: ARMSTRONG, FINE, & PORADA, JJ.

*Administrative Law*, Exhaustion of remedies. *Education*, Special educa-
tional benefits. *Damages*, Tort, Denial of special educational benefits.

This court held that, ordinarily, the statutory procedure set forth in the
    Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401 et seq.,
    and in the Massachusetts special education legislation, G. L. c. 71B and
    regulations thereunder, is the exclusive method of obtaining or chal-
    lenging an educational program for a child with disabilities. [486-488]
Plaintiffs, a child and her parents, could not maintain a tort action for
    damages against a municipality and employees of its public school sys-
    tem for the defendants' allegedly insufficient and inadequate evalua-
    tions of the child and the defendants' alleged failure to provide the
    child with an education suitable to her needs, where the plaintiffs had
    not exhausted their administrative remedies under the Individuals with
    Disabilities Education Act, 20 U.S.C. §§ 1401 et seq., and under the
    cognate State statute, G. L. c. 71B and regulations thereunder, before
    commencing their action, and where no exception to the exhaustion
    doctrine was applicable. [488]
Tort damages for pain and suffering are not available to parents and chil-
    dren whose claims are, in essence, that they suffered harm because the
    child was denied the right to a free public education appropriate to the
    child's special needs, where the State and Federal statutory schemes
    addressing the rights of children with disabilities do not provide for
    such damages and are the exclusive avenue for pursuing such claims.
    [488-489]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 24, 1992.

---

[1]A pseudonym.
[2]By her parents and next friends and her parents independently.
[3]Framingham Public Schools and nine school employees in their
capacity as school employees and individually.

The case was heard by *George A. O'Toole, Jr.,* J., on a motion for summary judgment.

*Dennis T. Murakami* for the plaintiffs.

*Philip B. Benjamin,* Special Assistant Town Counsel, for the defendants.

FINE, J. Kelly K. and her parents brought this tort action against the town of Framingham and nine individual employees of the Framingham public schools. Alleging negligence, intentional infliction of emotional distress, intentional interference with an advantageous relationship, and negligent misrepresentation, the plaintiffs claim that the defendants performed insufficient and inadequate evaluations of Kelly, a child with learning disabilities, from the time she entered the Framingham public schools and, as a result, that they failed to provide her with an education suitable to a child with her special needs. The defendants moved to dismiss the complaint or, in the alternative, for summary judgment, and the judge allowed the motion as to all the claims and all the defendants. He ruled that all of the plaintiffs' claims were barred by their failure to exhaust their administrative remedies, and he also gave additional reasons for his rulings on each of the claims. As we agree with the judge that, in the circumstances, the plaintiffs' claims are barred by their failure to avail themselves of their administrative remedies, we need not discuss the other reasons given by the judge for his decision.

The rights of all children with disabilities are provided for in an extensive and detailed legislative and regulatory scheme, both Federal and State. The Individuals with Disabilities Education Act (IDEA),[4] 20 U.S.C. §§ 1401 et seq. (Supp. 1992), guarantees all children with disabilities a free appropriate public education; it provides funding for States that meet certain conditions; and it sets forth procedural requirements to protect the rights of children with disabilities, including specific learning disabilities, commencing on the local level with professional evaluations, participation of par-

---

[4]Until recent amendments, the Act was known as the Education for All Handicapped Children Act, or EHA.

ents in the development of an individualized educational plan (IEP), and including the right on the part of the parents to a due process hearing to challenge any such plan, and, where that proves unsatisfactory, to judicial review. See *Honig* v. *Doe*, 484 U.S. 305, 309-312 (1988).[5] Comprehensive special education legislation, G. L. c. 71B, was first enacted in Massachusetts as Chapter 766 of the Acts of 1972, and extensive regulations have been in effect at all relevant times. 603 Code Mass. Regs. §§ 28.100 et seq. In brief, the Massachusetts statute and regulations provide: at the local level, children suspected of being in need of special education may be referred for an evaluation by a team of professionals. If there is a finding of a need for special education, an IEP is then prepared for the child's education in the least restrictive environment possible; the child must be educated according to the IEP or, if the parents reject a proposed IEP and efforts to reach a resolution fail, they are entitled to a hearing, held in accordance with G. L. c. 30A, before the Department of Education's bureau of special education appeals, with the right to judicial review in a State or Federal court. The rights the plaintiffs claim were impeded were created by these State and Federal statutes.

Kelly was a student in the Framingham public schools from 1978, when she entered a preschool program, until she left in 1988 to attend the Forman School, a private residential high school in Connecticut. Through grade six she received evaluations and, pursuant to IEPs, special education services. In August of 1986, Kelly's parents wrote to an official in the Framingham public schools that they "ha[d] been very pleased with the job that the schools ha[d] done for [Kelly]," and, because special education services would no longer be needed, they asked that all of her special education records be destroyed. Kelly attended a regular school program for grades seven and eight. In September of 1988, on

---

[5]In addition to considering the administrative record, the reviewing court can take additional evidence at the request of either party and "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). *Honig* v. *Doe*, 484 U.S. at 312.

their own initiative and without consulting Framingham school personnel, the parents placed Kelly K. in the Forman school, where we assume she remained until her graduation in 1992. Kelly's parents had her evaluated privately at various times while in the Framingham school system and also while in high school, and they shared the results with Framingham personnel. The plaintiffs claim dissatisfaction with both the evaluations performed by school personnel and the services provided over the course of Kelly's schooling.

At some point after Kelly was enrolled in high school, her parents sought to have Framingham reimburse them for the tuition, and, represented by counsel, they brought the matter before the bureau of special education appeals in August of 1990. After a prehearing conference, on October 15, 1990, Framingham school personnel prepared an IEP which did not provide for Kelly's attendance at the Forman school. The parents challenged the IEP, and a hearing before a bureau of special education appeals hearing officer was scheduled for November 1, 1990. However, by letters dated October 17, 1990, and November 8, 1990, the plaintiffs withdrew from the appeals process, and they filed this action in March of 1992.

Ordinarily, a party to a controversy within the exclusive jurisdiction of an administrative agency must exhaust his administrative remedies before initiating court action. See *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 539-540 (1976); *Murphy* v. *Administrator of Div. of Personnel Admn.,* 377 Mass. 217, 220 (1979); *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare,* 414 Mass. 330, 337 (1993). The principle applies whether the party failed to resort to the administrative process or administrative proceedings are pending at the time of suit. "This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Christopher W.* v. *Portsmouth Sch. Comm.,* 877 F.2d 1089, 1094 (1st Cir. 1989). Holding that, with limited exceptions,

the administrative remedies provided are exclusive, courts have applied the doctrine to claims of deprivation of rights under the special education statutes. See *Smith* v. *Robinson*, 468 U.S. 992, 1012-1013 (1984); *Christopher W.* v. *Portsmouth Sch. Comm.*, 877 F.2d at 1099; *Stock* v. *Massachusetts Hosp. Sch.*, 392 Mass. 205, 213 n. 14 (1984); *Pierce* v. *Board of Educ. of Chicago*, 69 Ill. 2d 89, 94 (1977); *Hoffman* v. *Board of Educ.*, 49 N.Y.2d 121, 127 (1979).[6] Following the reasoning in those cases, we hold that, ordinarily, the statutory procedure is the exclusive method of obtaining or challenging an educational program for a child with disabilities.

None of the recognized exceptions to the exhaustion doctrine which have been set forth in the context of complaints about special education, see *Christopher W.* v. *Portsmouth Sch. Comm.*, 877 F.2d at 1095-1098, is applicable here. Where the question raised is one of law, not one of fact within the agency's particular expertise, exhaustion is not required. See *Stock* v. *Massachusetts Hosp. Sch.*, 392 Mass. at 213. The issues raised by the plaintiffs, however, required factual determinations about the nature of Kelly's disability and appropriate educational programs as well as application of the agency's expertise to those facts. The exhaustion doctrine also may not apply where the plaintiff is being threatened with severe harm. At the time the plaintiffs resorted to the court action, however, Kelly was close to graduation from the private school her parents had chosen. Additionally, the plaintiffs have not suggested that asking for a hearing at any time over the course of Kelly's schooling, or pursuing the process they had begun in 1990, would have

---

[6]The exhaustion issue is closely related to the issue whether, in general, courts should entertain independent claims of educational malpractice. See *Peter W.* v. *San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 822 (1976); *Donohue* v. *Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 444 (1979). Contrast *B.M.* v. *State*, 200 Mont. 58 (1982). See generally Note, Educational Malpractice, 1990 U. Ill. L. Rev. 475. We need not decide in this case whether a claim of educational malpractice would ever be viable in Massachusetts.

been futile. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare*, 414 Mass. at 337.

There is also an exception for cases in which the relief available through the administrative process would be inadequate. Had they pursued the administrative process when they first became dissatisfied with Kelly's educational progress, the plaintiffs would have had the right to an expeditious determination of her special needs and an order that Framingham provide Kelly with whatever educational program was determined to be appropriate to meet those needs. Had they pursued and prevailed in the process they actually began, they could have avoided the consequences of the allegedly inadequate evaluations and inappropriate placements. They would have been entitled to reimbursement for all out-of-pocket expenses incurred in providing Kelly with private schooling and a prospective order that Framingham continue to pay for that schooling. See *Burlington Sch. Comm.* v. *Massachusetts Dept. of Educ*, 471 U.S. 359, 369, 370 (1985); *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 498 (1978). See also 603 Code Mass. Regs. § 28.404.3 (1993)[7]. The plaintiffs here, however, are seeking traditional tort damages for pain and suffering in addition to reimbursement for expenses they could have recovered through the administrative process.

An administrative remedy may be adequate even if it is not in all respects as prompt or broad as some alternative remedy. See *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 586 (1972). Moreover, we conclude that damages for pain and suffering are not available to parents and children

---

[7]This regulation, which was first promulgated in 1991, after these plaintiffs abandoned their administrative claim, provides: "When a hearing officer rules that a child with special needs should have received a program or service(s) which a school committee did not provide, the hearing officer may order the school committee to pay the full cost of the program or service(s) actually rendered, including, when necessary, reimbursement to the parent of such costs. Such reimbursement shall only be retroactive to the date the parents gave notice to the school committee by disputing or rejecting an inappropriate IEP, or other similar means, that the program or services offered were inappropriate, or to the date that the program or services could reasonably have been expected."

whose claims are, in essence, that they suffered harm because the child was denied his right to a free public education appropriate to his special needs. Damages for pain and suffering are not provided for in the statutory scheme, and, as the statutes provide the exclusive avenue for pursuing such a claim, the plaintiffs could not resort to other legal theories to pursue a right to damages. See *Smith* v. *Robinson*, 468 U.S. at 1012 (where the underlying claim arose under the Education for All Handicapped Children Act [EHA], allowing a plaintiff to recover attorney's fees under 42 U.S.C. § 1988, based upon a claim under 42 U.S.C. § 1983, or to recover damages and attorney's fees under the Rehabilitation Act, 29 U.S.C. §§ 794-794a, would be inconsistent with the EHA and Congress's comprehensive scheme); *Hurry* v. *Jones*, 734 F.2d 879, 885 (1st Cir. 1984) (a plaintiff could not recover additional damages under the Rehabilitation Act as a way of expanding the limited damage recovery under the Federal IDEA.) The limited remedies afforded in the IDEA represent "Congress' judgment that the best way to ensure a free appropriate public education for handicapped children is to clarify and make enforceable the rights of those children while at the same time endeavoring to relieve the financial burden imposed on the agencies responsible to guarantee those rights." *Smith* v. *Robinson*, 468 U.S. at 1021. We assume the same intent on the part of the Massachusetts Legislature in enacting G. L. c. 71B. Were courts to entertain claims such as the plaintiffs', the limited financial resources available to benefit children with special educational needs could be diverted from the programs and services designed for their benefit and could harm the class of persons the legislation was intended to protect.

*Judgment affirmed.*