JANE DOE, Individually and on Behalf of her son, John Doe, Plaintiff,

v.

TOWN OF FRAMINGHAM; and Eugene M. Thayer and Ann Blake, Individually and in their Official Capacity, Defendants.

Civil Action No. 96–11267–GAO.

United States District Court, D. Massachusetts.

June 4, 1997.

Harvey A. Schwartz, Heather L. Overholser, Schwartz, Shaw & Griffith, Boston, MA, for plaintiff.

Phillip B. Benjamin, Aaron K. Bikofsky, Office of Town Counsel, Framingham, MA, for defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

Jane Doe brought this action to recover damages that she alleges the defendants caused by compelling her to place her son in a private school despite the Town of Framingham's duty to provide him a free appropriate public education. In particular, Jane Doe alleges that the Town of Framingham denied her son a free appropriate public education (Counts I & II); committed educational malpractice (Count III); and wrongfully excluded him from the Framingham Public Schools in the Fall of 1994 (Counts IV through VII). The defendants have now moved for summary judgement on all counts.[1] For the following reasons, the Court denies the motion except as to Count III, which is granted.

### Background

When considering a motion for summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36–37 (1st Cir. 1995). Those facts, on the present record, are as follows:

Jane Doe ("Doe") is the mother of John Doe ("John"). In September 1992, John entered the sixth grade in a substantially separate special education classroom at the Hemmenway School, a public school in Framingham, Massachusetts.[2] The special needs classes at the Hemmenway School were taught by Anne Blake. John was placed in mainstream classes with the exception of the language arts and homeroom.[3]

In March 1993, Doe requested that the Special Education Team (the "Team")[4] determine whether John had a learning disability. The Team determined that John did not have any learning disabilities but did have educational gaps. Because of these educational gaps, Doe was informed that John would be aided by a small, structured classroom. Based on this information and John's impending graduation to Walsh Middle

---

1. Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

2. John was a new student in the Framingham Public Schools, having recently moved from another school district. He was a special needs student in a substantially separate classroom at his previous school.

3. It is disputed whether Doe requested John be put in the mainstream classes, or it was done solely by the school authorities.

4. A Special Education Team is the group responsible for developing an Individualized Education Plan if it is found that a child requires special education. *See* Mass.Regs.Code tit. 603, § 28.314.00.

School, which had approximately thirty five students per class, Doe considered placing him in a private school.

Doe contends that Blake encouraged her to place John in a private school because of its smaller classes. After John was unable to pass an entrance exam to Catholic Memorial High School ("CM"), Doe requested and received a meeting with the Team. The Team told Doe that John would only receive a "teacher advocate" at Walsh Middle School. Doe requested that Blake write a recommendation for John to CM and Blake obliged.

In Spring 1993, John took sixth grade achievement tests and was re-evaluated by Blake to determine whether he was a special needs student. The amended Individualized Education Plan (IEP)[5] prepared for him explained that John's low marks on the achievement tests were not signs of a learning disability. Thereafter, he was accepted into CM, and Doe informed the Framingham Public Schools that John would attend CM for the seventh grade.

In Summer 1993, Doe received a new IEP for John. The report recommended that John be placed in mainstream classes if he attended Walsh Middle School. Although John was attending CM, Blake explained that the IEP was prepared "just in case" John returned to the Framingham Public Schools.

John attended the seventh grade at CM and was required to withdraw for academic reasons at the end of the school year. In Fall 1994, John began the eighth grade at St. Tarcisius School, a private school in Framingham. In October 1994, John brought an antique gun to school and was immediately expelled from St. Tarcisius.

Soon thereafter, Doe contacted William Monnie, the liaison for the Department of Special Education for Framingham Public Schools. She requested that her son be placed in an appropriate school situation and receive special education services, including an evaluation and alternative placement. Doe did not receive any response to her requests and wrote a letter to Monnie stating

that John had been expelled from his last school without any hearing or other "process." Superintendent Eugene Thayer wrote to Doe explaining that the Town of Framingham was not required to provide educational services to a student who had been expelled from another school because of gun possession, but would provide ten hours of individual tutoring per week. In December 1994, the parties came to an agreement that John would attend, at Framingham's expense, a private school that could provide for his special needs.

*Discussion*

Initially, the defendants contend that the plaintiff's claims should be dismissed because Doe failed to exhaust her administrative remedies and is therefore barred from filing this action. *See generally, Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1093–95 (1st Cir.1989). The plaintiff responds that she was not required to pursue her administrative remedies because it would have been futile, and because the propriety of the exclusion of John from Framingham Public Schools presents a pure question of law. *Id.* at 1095.

The Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, requires states receiving federal funding to provide to all children with disabilities a free appropriate public education. The IDEA "imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free public education." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993) (citing 20 U.S.C. § 1401(a)(20)). Massachusetts receives federal funding, so it is required to provide children with disabilities with the education guaranteed to them by IDEA. *See* Mass. Gen.L. ch. 71B; Mass.Regs.Code tit. 603, § 28.000 *et seq.* That obligation devolves upon the Town of Framingham.

A student suspected of being a child in need of special education is to be given an initial evaluation. Mass.Regs.Code tit. 603, § 28.319.0. The Team is required to review

---

**5.** An IEP is a written statement developed for a child with a disability to meet the unique educational and service needs of the child. It also

states the manner in which these needs shall be met. 20 U.S.C. § 1401(a)(20); Mass.Regs.Code tit. 603, § 28.322.

the evaluation data and prepare an IEP if the child requires special education. The student's parent may accept or reject the IEP prepared by the school.

If the parent rejects the IEP, the parent has the right to a hearing to resolve any complaints about the child's IEP through an administrative process. *See* 20 U.S.C. § 1415(b)(2). In Massachusetts, the hearing is conducted by the Bureau of Special Education Appeals ("BSEA"). Mass.Regs.Code tit. 603, § 28.400.0. Any party dissatisfied with the decision of the BSEA has the right to appeal to either state or federal court.

■ "While parties ordinarily must exhaust administrative remedies under the IDEA before initiating court action, in certain cases, they may bypass the administrative process to seek judicial relief." *Pihl,* 9 F.3d at 190. A party is not required to pursue administrative remedies if further agency proceedings would be futile, or if the issue is a pure matter of law. *See Christopher W.,* 877 F.2d at 1095.

Doe admits that she has not pursued the mandated administrative route. Instead, Doe claims that it would have been futile to have appealed the IEP because John was not attending the Hemmenway School. An appeal at that stage would most likely have met strong resistance on ripeness grounds. Further, it would have wasted the resources of both parties to contest what was only a "hypothetical" IEP.

■ Further, Blake's assurances that the plan was "just in case" John returned to Framingham Public Schools deterred her from appealing the IEP. The law does not require that a parent exhaust its administrative remedies if the school administrators thwart the parent's appeal route by misrepresentations or fraud. *See Pihl,* 9 F.3d at 190–91 (stating that "exhaustion is not normally required where the agency has prevented the litigant from pursuing her claim at the administrative level") (citing *Ezratty v. Commonwealth of P.R.,* 648 F.2d 770, 775 (1st Cir.1981)). Whether there was any such misrepresentation or fraud, as Doe alleges and the defendants deny, is a disputed issue of fact, and precludes summary judgment.

■ The defendants also contend that Doe did not exhaust her administrative remedies pertaining to her claim that Superintendent Thayer wrongfully excluded John from the Framingham Public Schools after his expulsion from St. Tarcisius. Yet, "[w]here the question raised is one of law, not one of fact within the agency's particular expertise, exhaustion is not required." *Kelly K. v. Town of Framingham,* 36 Mass.App.Ct. 483, 633 N.E.2d 414, 417 (1994). The propriety of Superintendent Thayer's exclusion of John for the short period in late 1994 appears to present a pure question of law. It is not disputed that John was expelled from a private school, that he was given no hearing, and that he was also excluded from Framingham Public Schools for a short period. The question is whether Framingham's action violates the IDEA. That is a question of law as to which the plaintiff was not required to pursue her administrative remedies. *See Christopher W.,* 877 F.2d at 1095, 1098–99.

Even though the issue will be resolved by a ruling of law, it is not clear that the pertinent factual record before the Court is complete. It can be said that the defendants are not entitled to judgment as a matter of law on the present record. The plaintiff has not moved for judgment. In these circumstances, it is not appropriate to decide the question at this point.

*Educational Malpractice*

In Count III, Doe claims that the Town of Framingham failed to use due care in testing John and placing him in an appropriate special education program in July 1993. This type of claim has come to be known as "educational malpractice." Although the plaintiff acknowledges the many court decisions that have found that such a claim does not exist at common law, she argues that this case is different because the defendants failed to follow state policy.

An educational malpractice claim against a public school has yet to be addressed by a Massachusetts court. *But see Cares v. The Rivers Country Day School,* C.A. No. 88–3303 (Super.Ct. March 3, 1990) (denying summary judgment on an educational malpractice claim against a *private school* be-

cause the parent was not able to use the administrative appeal route of public schools under IDEA). However, many other courts have reviewed such claims and have rejected them. *Ross v. Creighton Univ.,* 957 F.2d 410, 414 (7th Cir.1992) (stating that "the overwhelming majority of states that have considered [an educational malpractice] claim have rejected it."); *D.S.W. v. Fairbanks North Star Borough School Dist.,* 628 P.2d 554 (Alaska 1981); *Hoffman v. Board of Educ. of New York,* 49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317 (1979); *Donohue v. Copiague Union Free School Dist.,* 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979). *But see, B.M. v. State of Montana,* 200 Mont. 58, 649 P.2d 425, 427–28 (1982) (allowing such a claim to go forward but basing its decision on state statutes that place a duty of care on educators)

 Both federal and Massachusetts law provide regulatory remedies to deal with what might be termed educational malpractice. The administrative process provides an expeditious means of resolving educational disputes in which both parents and administrators are involved. In an area specifically addressed by such meticulous regulation, there is no need to construct what is likely to be a redundant and clumsy common law remedy. Massachusetts has not done so, and it does not appear likely that it would.

The Court concludes that Doe's "educational malpractice" claim against the Town of Framingham is not recognized under Massachusetts law. The defendants' motion for summary judgment is granted with respect to Count III.

*Individual Liability*

The individual defendants, Blake and Thayer, have moved to dismiss the claims against them because they argue that they have qualified immunity and because the IDEA does not provide for individual liability.

Although this action is to enforce rights under the IDEA, the plaintiff has brought suit pursuant to 42 U.S.C. § 1983, which provides for individual liability. Therefore, the defendants' argument that the IDEA does not provide for individual liability is not

applicable under the circumstances of this case.

 Qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Team members and school officials may well be eligible for qualified immunity, see *Puffer v. Raynolds,* 761 F.Supp. 838, 847–48 (D.Mass.1988), but at this early stage of the discovery process, there are factual disputes which need to be resolved before such a determination can be made.

For the preceding reasons, the defendants' motion for summary judgment is denied, except as to Count III.