**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 5 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAYNE PADILLA, by and through
her legal guardians and next friends
MICHELLE PADILLA and
MARIANO PADILLA,

      Plaintiff - Appellee,

  v.

SCHOOL DISTRICT NO. 1 IN THE
CITY AND COUNTY OF DENVER,
COLORADO; DENVER SCHOOL
DISTRICT BOARD OF
EDUCATION; JEAN BOGGS,
individually and in her official
capacity as employee of School
District No. 1 in the City and County
of Denver,

      Defendants,

    and

PATRICE HALL; CYNTHIA ROSE;
MARIA DIAZ; JEANNIE HAYES,
individually and in their official
capacities as employeees of School
District No. 1 in the City and County
of Denver,

      Defendants - Appellants,

No. 99-1061 & 99-1345

------------------------

LEGAL CENTER FOR PEOPLE
WITH DISABILITIES AND OLDER
PEOPLE;
COLORADO DEVELOPMENTAL
DISABILITIES PLANNING
COUNCIL;
NATIONAL ASSOCIATION OF
PROTECTION AND ADVOCACY
SYSTEMS; CENTER FOR LAW AND
EDUCATION; TASH; THE
ASSOCIATION FOR COMMUNITY
LIVING IN BOULDER COUNTY,
INC.; ARC OF DENVER; ARC OF
ADAMS COUNTY; ARC OF
ARAPAHOE & DOUGLAS
COUNTIES; ARC OF
COLORADO; ARC OF THE UNITED
STATES; NAMI COLORADO;
NATIONAL ALLIANCE FOR THE
MENTALLY ILL; ROCKY
MOUNTAIN CHILDREN'S LAW
CENTER; NATIONAL SCHOOL
BOARDS ASSOCIATION;
COLORADO ASSOCIATION OF
SCHOOL BOARDS,

      Amici Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-WY-1262-CB)**

Patrick B. Mooney (Julie C. Tolleson and Elizabeth J. Hyatt with him on the briefs) of Semple, Miller & Mooney, P.C., Denver, Colorado, for Defendants-Appellants.

Kathleen Mullen of Law Office of Kathleen Mullen, P.C., Denver, Colorado, for Plaintiff-Appellee.

Richard F. Hennessey and Kathryn A. Wingard of Pendleton, Friedberg, Wilson & Hennessey, P.C., filed an amicus curiae brief for Rocky Mountain Children's Law Center.

Kathleen B. Boundy, Co-Director, Center for Law and Education, Boston, Massachusetts, and Michael W. Breeskin, General Counsel, Association for Community Living in Boulder County, Inc., filed an amicus curiae brief for Center for Law and Education, Tash, and the Association for Community Living in Boulder County, Inc.

Kristin A. Kutz and William P. Bethke of Kutz & Bethke, Lakewood, Colorado, filed an amicus curiae brief for Arc of Denver, Arc of Adams County, Arc of Arapahoe & Douglas Counties, Arc of Colorado, Arc of the United States, NAMI Colorado, and National Alliance for the Mentally Ill.

Julie K. Underwood, General Counsel, National School Boards Association, Alexandria, Virginia; Lauren B. Kingsbery and Julie Murphy Seavy, Legal Counsel, Colorado Association of School Boards, Denver, Colorado; and Julie J. Weatherly, School Board Attorney, Weatherly Law Firm, Atlanta, Georgia, filed an amicus curiae brief for National School Boards Association and Colorado Association of School Boards.

Chester R. Chapman, Denver, Colorado, filed an amicus curiae brief for The Legal Center for People with Disabilites and Older People, the Colorado Developmental Disabilities Planning Council, and National Association of Protection and Advocacy Systems.

---

Before **BALDOCK**, **McKAY**, and **ALARCON**[*], Circuit Judges.

---

[*]Honorable Arthur L. Alarcon, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

**McKAY**, Circuit Judge.

Plaintiff, a minor with physical and developmental disabilities, formerly attended school in Denver School District No. 1. She brought an action against the school district and the board of education, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. She also brought an action against the district, the board, and several individual district employees, alleging violations of 42 U.S.C. § 1983 based on Defendants' failure to provide rights guaranteed by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487. Defendants moved to dismiss on various grounds, including qualified immunity, but the district court denied their motion except as to one of the individual defendants. This court has jurisdiction over the remaining individual defendants' qualified immunity appeal pursuant to Mitchell v. Forsyth, 472 U.S. 511 (1985), and over the appeal of the district court's other determinations pursuant to its certification for immediate appeal under 28 U.S.C. § 1292(b).[1]

I.

---

[1]Plaintiff's motions to dismiss this appeal and for attorney fees are denied.

In 1975, Congress enacted the Education of the Handicapped Act (EHA), the IDEA's predecessor.[2] Its primary purpose is "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of children with disabilities and their parents or guardians are protected." 20 U.S.C. § 1400(d)(1)(A)-(B).[3] To implement these goals, Congress mandated that state and local educational agencies receiving assistance under the IDEA establish procedures to ensure the provision of such services and the protection of these rights. See id. § 1415(a). To identify necessary services, the IDEA requires representatives of the responsible educational agencies, in meetings with parents and teachers, to develop an individualized education program (IEP) for each child with a disability. The IEP includes a written statement of the present educational level of such child, of annual goals and short-term instructional objectives, and of "specific educational

_____

[2]Congress changed the EHA's name to the IDEA in 1990. See Pub. L. No. 101-476, 104 Stat. 1141 (1990). We use EHA and IDEA interchangeably throughout the opinion.

[3]Congress amended the IDEA and recodified several provisions in 1997. See Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37 (1997). The material events giving rise to the case at hand occurred prior to these amendments. Moreover, the 1997 amendments are not retroactive. See Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1434-35 (10th Cir. 1997). We therefore apply and cite to the IDEA provisions as codified prior to enactment of the 1997 amendments. In any event, no party has suggested that any revision would change the analysis or outcome of this case.

-5-

services to be provided to such child." § 1401(a)(20). Before developing or changing a child's IEP, the agency must provide written notice to the parents. See id. § 1415(b)(1)(C). The agency must also provide parents who present complaints regarding these matters an impartial due process hearing. See id. § 1415(b)(1)-(2). Any party aggrieved by the decision of a local educational agency may appeal to the state educational agency. See id. § 1415(c). Further, an aggrieved party has the right to bring a civil action with respect to its complaints if the state has not provided an administrative appeals process or if the aggrieved party is dissatisfied with the findings or decision of the administrative appeal agency. See id. § 1415(e).

## II.

"Because this appeal arises on a motion to dismiss, we construe the facts, and reasonable inferences that might be drawn from them, in favor of the plaintiff." Breidenbach v. Bolish, 126 F.3d 1288, 1292 (10th Cir. 1997). According to Plaintiff, during the five-year period between 1992 and 1997, Defendants failed to provide her with the behavioral programming, augmentative communication, and tube feeding services identified in her IEP.

She also asserts Defendants repeatedly "placed her in a windowless closet, restrained in a stroller without supervision," contrary to her IEP. During one of these incidents she tipped over and hit her head on the floor, suffering serious

physical injuries, including a skull fracture and exacerbation of a seizure disorder, which kept her from attending school for the remainder of the term. The school district thereafter failed to provide homebound schooling adequate to insure the free appropriate public education to which she was entitled.

In August 1997, Plaintiff moved to a new school district and began attending a different school, neither of which is a party to this action. In February 1998, she requested an administrative hearing from the defendant school district to "contest certain actions of . . . [district] personnel." In her request, Plaintiff sought "any relief" available through the administrative process, "including money damages and attorney fees." Plaintiff's hearing request was denied by the hearing officer, who ruled that he lacked jurisdiction "as the petitioner does not reside within the school district," and that he lacked authority to grant the requested relief.

Thereafter, Plaintiff filed the instant suit, raising two claims. First, she alleged that the school district and the board of education violated her rights under the ADA by excluding her from participation in publicly funded general and special education programs based on her disability. Second, she brought an action under 42 U.S.C. § 1983, alleging that the school district, the board of education, and several individual district employees violated her rights under the

IDEA by denying her a free and appropriate public education. Plaintiff specifically seeks monetary damages for both the ADA and § 1983 claims.

Defendants moved to dismiss, arguing that (1) Plaintiff failed to exhaust her administrative remedies; (2) damages are unavailable under the IDEA and therefore unavailable in a § 1983 claim based on an IDEA violation; (3) the IDEA does not allow individual liability actions, and, therefore, individuals cannot be liable under a § 1983 claim based on an IDEA violation; and (4) the individual defendants were entitled to qualified immunity. The district court dismissed Plaintiff's § 1983 claim as it applied to one of the individual defendants but denied the motion in all other respects, and the remaining defendants brought this appeal.

### III.

"We review the denial or grant of a motion to dismiss de novo, applying the same standard used by the district court." Breidenbach , 126 F.3d at 1291. We first address the viability of Plaintiff's IDEA-based § 1983 claims. The district court determined that the IDEA allows for damage awards and that it may be enforced against individuals. Therefore, the court reasoned, Plaintiff can likewise sue individuals and seek damages in a § 1983 suit based on the IDEA. The district court's analysis presupposes that § 1983 may be used to enforce the IDEA

in the first place.  This court has not previously ruled on this issue. [4]  Circuits that
have addressed the question have not come to the same conclusion. [5]

_____

[4]In L.C. v. Utah State Board of Education , 57 F. Supp. 2d 1214, 1220 (D. Utah 1999), the district court stated that two Tenth Circuit cases have held that § 1983 claims may be predicated on the IDEA.  We respectfully disagree with the district court's interpretations.  Hayes v. Unified School District No. 377 , 877 F.2d 809, 811 (10th Cir. 1989), involved a plaintiff asserting a § 1983 claim based on alleged constitutional violations, not IDEA violations.  In the other case cited by the district court, Association For Community Living v. Romer , 992 F.2d 1040, 1042 (10th Cir. 1993), it appears the plaintiffs' § 1983 claim asserted violations of the IDEA and the Equal Protection Clause.  However, in dismissing the plaintiffs' claims for failure to exhaust their administrative remedies, the panel did not discuss the viability of the IDEA-based § 1983 claim.  Thus, we do not read Romer as holding, or otherwise compelling the conclusion, that IDEA violations may form the substantive basis for § 1983 claims.

[5]A majority of the circuits have case law holding or at least implying that § 1983 suits may be based on IDEA violations.  See Mrs. W. v. Tirozzi , 832 F.2d 748, 753-55 (2d Cir. 1987) (express holding); W.B. v. Matula , 67 F.3d 484, 493-94 (3d Cir. 1995) (express holding); Angela L. v. Pasadena Indep. Sch. Dist. , 918 F.2d 1188, 1193 n.3 (5th Cir. 1990) (dicta); Crocker v. Tennessee Secondary Sch. Athletic Ass'n , 980 F.2d 382, 387 (6th Cir. 1992) (implying that the IDEA may be the basis for a § 1983 suit, but holding that damages were not available); Heidemann v. Rother , 84 F.3d 1021, 1032-33 (8th Cir. 1996) (same); Digre v. Roseville Sch. Indep. Dist. No. 623 , 841 F.2d 245, 249-50 (8th Cir. 1988) (express holding); N.B. by D.G. v. Alachua County Sch. Bd. , 84 F.3d 1376, 1379 (11th Cir. 1996), cert. denied , 519 U.S. 1092 (1997) (holding that plaintiff must exhaust administrative remedies before proceeding with an IDEA-based § 1983 claim (though not specifically addressing the claim's viability)); Walker v. District of Columbia , 969 F. Supp. 794, 796-97 (D.D.C. 1997) (express holding).

The Fourth Circuit has held that § 1983 cannot be used to remedy a violation of the IDEA.  See Sellers v. Sch. Bd. , 141 F.3d 524, 529-32 (4th Cir. 1998), cert. denied , 525 U.S. 871 (1998).

The First, Seventh, and Ninth Circuits have cases appearing to go both ways.  Compare Doe v. Town of Framingham , 965 F. Supp. 226, 230 (D. Mass. 1997) (assuming § 1983's applicability to the IDEA), with Andrew S. v. Sch.

It is well settled that § 1983 is "a generally and presumptively available remedy for claimed violations of federal law." Livadas v. Bradshaw, 512 U.S. 107, 133 (1994). Nonetheless, Congress can foreclose recourse to § 1983 "either by express words or by providing a comprehensive alternative enforcement scheme." Id.; see also Blessing v. Freestone, 520 U.S. 329, 341 (1997). Congress has not expressly prohibited § 1983 suits as remedies for IDEA violations, so we must turn to the question of whether the IDEA's administrative remedies nevertheless imply congressional intent to do so. Supreme Court precedent guides our inquiry.

In Smith v. Robinson, 468 U.S. 992 (1984), the Supreme Court considered whether the plaintiffs could pursue "virtually identical" claims for a free appropriate education under the EHA (IDEA's predecessor), the Rehabilitation Act, and § 1983 (based on alleged Equal Protection and Due Process deprivations). Id. at 1009. The Court concluded that the EHA's thorough enforcement mechanisms indicated Congress' intent to proscribe such a course of

Comm., 59 F. Supp. 2d 237, 244 (D. Mass. 1999) (stating that garden variety. violations of the IDEA cannot form the basis of a § 1983 claim); compare Marie O. v. Edgar, 131 F.3d 610, 621-22 (7th Cir. 1997) (stating § 1983 may be used to enforce the IDEA), with Anderson v. Thompson, 658 F.2d 1205, 1214-17 (7th Cir. 1981) (prohibiting IDEA-based § 1983 claims); compare Emma C. v. Eastin, 985 F. Supp. 940, 945 (N.D. Cal. 1997) (holding that Congress "specifically authorized § 1983 actions predicated on the IDEA"), with Dep't of Educ. v. Katharina D., 727 F.2d 809, 819-20 (9th Cir. 1983), cert. denied, 471 U.S. 1117 (1985) (holding that the IDEA cannot provide the basis for a § 1983 claim).

action.  See id. at 1012-13, 1018.  For example, as to the plaintiffs' § 1983 claim

based on the Equal Protection Clause, the Court stated that

> where the EHA is available to a handicapped child asserting a right
> to a free appropriate public education, based either on the EHA or on
> the Equal Protection Clause of the Fourteenth Amendment, the EHA
> is the exclusive avenue through which the child and his parents or
> guardian can pursue their claim.

Id. at 1013.  Smith did not specifically involve the question of whether the EHA

precludes § 1983 suits based on EHA violations.  In fact, the Court expressly

recognized that the plaintiffs' § 1983 claims alleged constitutional violations, not

EHA violations.  See id. at 1008-09.  Nonetheless, the    Court's holding that the

EHA provided a comprehensive enforcement scheme that preempted other

overlapping but independent statutory or constitutional claims necessarily meant

that the EHA also supplanted § 1983 claims based simply on EHA violations.

In response to   Smith , Congress amended the EHA in 1986.     See Pub. L. No.

99-372, 100 Stat. 796 (1986); S. Rep. No. 99-112, at 2 (1985),      reprinted in  1986

U.S.C.C.A.N. 1798, 1799.  Among other provisions, Congress added § 1415(f),

which stated in pertinent part:  "Nothing in this title shall be construed to restrict

or limit the rights, procedures, and remedies available under the Constitution, title

V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights

of handicapped children and youth."  This provision obviously voided       Smith 's

broad holding that the EHA precludes overlapping but independent claims

otherwise cognizable under the Constitution, the Rehabilitation Act, or other Federal laws. See Hayes v. Unified Sch. Dist. No. 377, 877 F.2d 809, 812 (10th Cir. 1989) ("Congress' amendment of the EHA makes clear that the EHA is not the exclusive remedy available to handicapped students seeking public educational benefits."); H.R. Rep. No. 99-296, at 6 (1985) (stating that § 1415(f) is intended to reaffirm "the viability of section 504 [of the Rehabilitation Act] and other federal statutes such as 42 U.S.C. 1983 as separate from but equally viable with the EHA as vehicles for securing the rights of handicapped children and youth"). It is less obvious, however, whether Congress intended § 1415(f) to also overrule Smith's more narrow implication that the EHA provides a comprehensive remedial framework that forecloses recourse to § 1983 as a remedy for strictly EHA violations. This difficult question has created a split in the circuits. Compare, e.g., Marie O. v. Edgar, 131 F.3d 610, 622 (7th Cir. 1997) ("§ 1415(f) was enacted for the express purpose of ensuring that § 1983 claims would be available to enforce the IDEA."), and W.B. v. Matula, 67 F.3d 484, 494 (3d Cir. 1995) (same), with Sellers v. Sch. Bd., 141 F.3d 524, 530-32 (4th Cir. 1998) (stating that § 1415(f) does not allow plaintiffs to sue under § 1983 for an IDEA violation and that § 1415 does not overrule Smith on that point).

We agree with the Fourth Circuit that § 1415(f) left intact Smith's implication that the EHA may not provide the basis for § 1983 claims. See

Sellers, 141 F.3d at 529-30. Post-Smith Supreme Court precedent compels this conclusion. Since Congress passed § 1415(f) in 1986, the Court has nevertheless cited Smith and the EHA/IDEA on at least two occasions as an example of an exhaustive legislative enforcement scheme that precludes § 1983 causes of action. See Blessing, 520 U.S. at 347-48; Wright v. City of Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 423-24, 427 (1987). In Wright, the Court noted that the EHA itself "provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." 479 U.S. at 427. The Blessing Court discussed Smith as one of only two cases in which it had "found a remedial scheme sufficiently comprehensive to supplant § 1983." 520 U.S. at 347. Moreover, the Court used the EHA/IDEA in both cases as a benchmark for assessing the comprehensiveness of the remedial scheme provided by the statutes in question. See id. at 348; Wright, 479 U.S. at 427. Based on these cases, it appears the Supreme Court considers Smith to be alive and well insofar as it asserts that § 1983 may not be used to remedy IDEA violations. Accordingly, we reverse the trial court's denial of the motion to dismiss Plaintiff's IDEA-based § 1983 claims against the school district, the board of education, and the individual defendants. This conclusion moots the qualified immunity issues. Furthermore, in light of our holding and Plaintiff's failure to make an

-13-

independent IDEA claim, we need not address whether the IDEA imposes individual liability or permits damage awards.

IV.

Defendants argue that the trial court erred in denying their motion to dismiss Plaintiff's ADA claim against the school district and the board of education for failure to exhaust her administrative remedies.

Although Plaintiff proceeds under the auspices of the ADA, the IDEA nonetheless requires her to first exhaust its administrative procedures and remedies prior to commencing her ADA suit if she is "<u>seeking relief that is also available under</u>" the IDEA. 20 U.S.C. § 1415(f) (emphasis added). Like the Seventh Circuit, we understand "available" relief "to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers," <u>Charlie F. v. Bd. of Educ.</u>, 98 F.3d 989, 992 (7th Cir. 1996), or specifically seeks. Thus, our primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself. See <u>Hayes v. Unified Sch. Dist. No. 377</u>, 877 F.2d 809, 812 (10th Cir. 1989) (stating that the IDEA's remedies must be exhausted before a plaintiff files a non-IDEA suit if that "suit could have been filed under the" IDEA). In essence, the dispositive question generally is whether the plaintiff

has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem. See, e.g. , Charlie F. , 98 F.3d at 992, 993.

So far as we can tell in the instant case, Plaintiff seeks damages solely to redress the fractured skull and other physical injuries she suffered allegedly as a result of the school district's and board of education's purported ADA violations. Plaintiff makes no complaints regarding her current educational situation. Indeed, she expressly attests that her new school "meets her educational needs" and that she presently receives "the full benefits of a free and appropriate education in an integrated, least restrictive educational environment." Under these narrow circumstances, we fail to see how the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries. That is not to say damages are unavailable under the IDEA. We have not previously addressed that question and need not to resolve this case. Our holding simply recognizes the fact that even if damages are available under the IDEA they

-15-

should be awarded in civil actions, not in administrative hearings. Cf. Covington v. Knox County Sch. Sys., 205 F.3d 912, 918 (6th Cir. 2000) (stating that damages are "unavailable through the [IDEA] administrative process"); W.B. v. Matula, 67 F.3d 484, 494-96 (3d Cir. 1995) (holding that IDEA-based § 1983 suits permit damage awards, but damages cannot be awarded during the course of the IDEA's administrative proceedings).

We affirm the district court's denial of Defendants' motion to dismiss for failure to exhaust administrative remedies. Under the narrow circumstances of this case, exhaustion was unnecessary because, so far as we can tell, Plaintiff's ADA claim is not seeking "relief that is also available" under the IDEA.

In conclusion, we note that other circuits, although employing slightly different approaches to the problem, have reached similar conclusions under similar circumstances. For example, in Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275-76 (9th Cir. 1999), the Ninth Circuit held that exhaustion was not required where the plaintiff was seeking "only monetary damages" for alleged "physical abuse and injury" and "all educational issues already have been resolved to the parties' mutual satisfaction." The court noted that "[t]he remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages." Id. at 1276. Likewise, in Matula, 67 F.3d at 496,

-16-

the Third Circuit refused to require administrative exhaustion in a claim for compensatory damages in part because the parties had already settled their disputes over IDEA rights.

Moreover, circuit court cases cited by Defendants that have required plaintiffs who seek damages to exhaust their IDEA administrative remedies have done so where the plaintiffs' alleged injuries were educational in nature and therefore presumptively redressable through the IDEA's administrative procedures. See, e.g. , Thompson v. Bd. of Special Sch. Dist. 1 , 144 F.3d 574, 580 (8th Cir. 1998) (requiring exhaustion where plaintiff sought damages and one-on-one tutoring to remedy alleged denial of free and appropriate public education, and dismissing § 1983 claim on insufficient evidence grounds); Charlie F., 98 F.3d at 993 (requiring exhaustion where the plaintiff alleged "that his education has suffered"); N.B. by D.G. v. Alachua County Sch. Bd. , 84 F.3d 1376, 1378 (11th Cir. 1996) (requiring exhaustion where the plaintiff's alleged injuries included segregation from non-disabled children and unnecessary absence from school). Under those distinct circumstances, we would also require exhaustion.

The denial of the motion to dismiss the § 1983 actions is REVERSED. The denial of the motion to dismiss the ADA action is AFFIRMED. The case is REMANDED for further proceedings consistent with this opinion.