COMMONWEALTH vs. NATHANIEL N., a juvenile.

No. 99-P-1085.

Plymouth. January 5, 2001. - March 14, 2002.

Present: JACOBS, LENK, & BECK, JJ.

*Controlled Substances. Juvenile Court,* Delinquent child. *Due Process of Law,* Juvenile delinquency proceeding. *Education,* Special educational needs. *Individuals with Disabilities Education Act. Evidence,* School records.

This court concluded that the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., as amended by Pub. L. 105.17, 111 Stat. 98 (1997), clearly authorized a high school to report, to the appropriate authorities, criminal activity by a student with a disability, and did not prohibit the subsequent initiation of juvenile court proceedings against the student. [203-204]

A juvenile with a disability failed to demonstrate that his school's failure to provide the police with copies of his school records violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(k)(9)(B), or that the alleged lack of the records prejudicially affected subsequent delinquency proceedings. [204-206]

This court declined to consider an argument on appeal that did not rise to the level of acceptable appellate argument. [206-207]

COMPLAINTS received and sworn to in the Plymouth County Division of the Juvenile Court Department on March 18, 1998.

Motions to dismiss and for reconsideration were heard by *Louis D. Coffin,* J., and the cases were heard by him.

*Holly T. Smith* for the juvenile.

*Patrick C. Lee,* Assistant District Attorney, for the Commonwealth.

BECK, J. The juvenile appeals from an adjudication of delinquency for possession of two small bags of marijuana in school. G. L. c. 94C, §§ 31, 34. He was sentenced to one year of probation with the following conditions: that he remain alcohol and drug free; that he submit to random urine tests; and that he either be involved in an educational program or seek and maintain employment. He was found not delinquent of pos-

session of marijuana with intent to distribute and of doing so within 1,000 feet of a school.

On appeal, he argues that the Juvenile Court proceeding constituted a change in educational placement or services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq. (Supp. 1999). He claims that his motion to dismiss the delinquency complaint should have been allowed because he did not receive the procedural protections the IDEA requires in connection with such a change. See 20 U.S.C. § 1415(b). He also claims that his high school violated the IDEA by failing to provide the police with his records pursuant to 20 U.S.C. § 1415(k)(9)(B). Underlying these claims is the juvenile's contention that the school failed to provide him with the free and appropriate education to which he was entitled under the IDEA. 20 U.S.C. § 1412(a)(1)(A). That issue, of course, cannot be litigated in this appeal. The school was not a party to the Juvenile Court proceeding. Moreover, the circumstances under which a judge may dismiss a delinquency charge before trial over the Commonwealth's objection are strictly limited and do not include the circumstances here. See *Commonwealth* v. *Pellegrini*, 414 Mass. 402, 404-405 (1993), citing cases. Indeed, such dismissal would violate art. 30 of the Massachusetts Declaration of Rights, which creates the separation of powers among the branches of government. *Ibid.*

*Background.* In the morning of a school day in March, 1998, a teacher at the high school the juvenile was attending approached the principal to report what the teacher thought was a drug transaction. The teacher identified two participants, one of whom was the juvenile. Upon questioning by the principal, the other participant said he had purchased marijuana from the juvenile. The principal then called the local police. Once the police arrived, the principal questioned the juvenile in the presence of the police. The juvenile denied knowledge of any drug transaction and asked to go to the bathroom. The principal told the juvenile that he could go to the bathroom if he emptied his pockets. In response, the juvenile put two homemade pipes and his wallet on the table. The principal examined the wallet and found two small packages of marijuana, similar to those in the possession of the other student, and seven dollars. At that point,

the juvenile's mother was called. A lieutenant in the local police department subsequently took out three delinquency complaints. (The juvenile's motion to suppress the marijuana was denied, and the juvenile does not appeal from that ruling.)

The IDEA is a complex Federal grant program intended to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). As a condition for receiving Federal funds under the IDEA, the States agree to comply with the provisions of the law. *Kelly K.* v. *Framingham*, 36 Mass. App. Ct. 483, 484-485 (1994). The comprehensive provisions of the IDEA include both substantive and procedural rights designed to ensure achievement of the statutory goals. See *ibid.*; *Honig* v. *Doe*, 484 U.S. 305, 310 (1988) (discussing predecessor statute, the Education of the Handicapped Act [EDA]). The analogous Massachusetts law is G. L. c. 71B, inserted by St. 1972, c. 766. See *Kelly* v. *Framingham*, *supra* at 485. Among the procedural safeguards set out in the IDEA is the requirement that schools provide "written prior notice" of a proposed change in the educational placement of a child, as well as other due process protections. 20 U.S.C. § 1415(b)(3), (c)-(f).

Prior to the proceeding at issue here, the juvenile had a long history of disruptive behavior at home as well as at school. He was the subject of numerous disciplinary actions for, among other things, directing vulgar language at teachers, disobeying school rules, and failing to report for assigned detentions. In 1995, the assistant principal referred him for a "psychoeducational evaluation." The psychologist concluded that "[t]esting [at that time did] not suggest a special education need." The psychologist noted, however, that if the juvenile's "behavioral issues" continued, "placement in a program for students with behavioral and emotional disturbances" might be "appropriate."

At the time of trial, the juvenile was seventeen and was working, but not in school. The Juvenile Court judge assumed that the juvenile's behavior problems constituted a disability under the IDEA. For the purposes of this appeal, we shall make the same assumption, the Commonwealth's argument to the contrary

notwithstanding. See 20 U.S.C. § 1415(k)(8) (providing that a juvenile who has not been determined to be eligible for special education, but who has engaged in conduct that violated school rules, may assert the protections of the IDEA under certain circumstances arguably applicable here). Contrast *Springer* v. *Fairfax County Sch. Bd.*, 134 F.3d 659, 663-664 (4th Cir. 1998) (continued misbehavior or social maladjustment not serious emotional disturbance). Even if the juvenile is disabled, he is not entitled to the relief he seeks.

1. *Report of criminal conduct: 20 U.S.C. § 1415(k)(9)(A).* The juvenile claims that "[t]he initiation of juvenile court proceedings trigger[ed] . . . due process protections [connected with] the initiation of a 'change in placement' under the IDEA." He relies on *Morgan* v. *Chris L.*, 927 F. Supp. 267 (E.D. Tenn. 1994), aff'd, 106 F.3d 401 (6th Cir.), cert. denied, 520 U.S. 1271 (1997), in support of this argument. He claims that the failure to provide these protections, which he does not specify, requires that the delinquency complaint be dismissed. This argument is without merit.

*Morgan* v. *Chris L.*, *supra*, is distinguishable. That case was not an appeal of a delinquency proceeding. Rather, *Morgan* was a civil appeal from an order of an administrative law judge (ALJ) that the school seek termination of the juvenile court proceedings the school itself had brought. "[T]he ALJ did not order the juvenile court to do anything." *Id.* at 270. By contrast, the case before us is a direct appeal of a delinquency proceeding, which the police initiated, not the school.

In *Morgan*, the Federal District Court judge ruled that "[w]hat [made] the filing of an unruly petition a change in placement for IDEA's purposes . . . [was] the potential which juvenile court proceedings have for changing a child's educational placement in a significant manner." *Id.* at 271. Congress has implicitly rejected this reasoning by amending the IDEA in 1997, apparently in direct response to the *Morgan* case. See Pub. L. 105.17, 111 Stat. 98 (1997); Seligmann, Not as Simple as ABC: Disciplining Children with Disabilities under the 1997 IDEA Amendments, 42 Ariz. L. Rev. 77, 115 n.211 (2000).

The amended language to the IDEA provides as follows:

"Nothing in this subchapter shall be construed to prohibit

an agency from reporting a crime committed by a child
with a disability to appropriate authorities or to prevent
State law enforcement and judicial authorities from
exercising their responsibilities with regard to the applica-
tion of Federal and State law to crimes committed by a
child with a disability."

20 U.S.C. § 1415(k)(9)(A). This provision clearly applies to the
proceeding at issue here. There was no error in the denial of the
juvenile's motion to dismiss on this ground. Cf. *Adoption of
Gregory,* 434 Mass. 117, 118 (2001) (Americans with
Disabilities Act, 42 U.S.C. § 12132 [2000], may not be
raised as defense to parental termination proceedings under
G. L. c. 210, § 3).

The juvenile argues that "[t]he fact that the [J]uvenile [C]ourt
petition was taken out by a police officer rather than [the school]
should not change the application of the IDEA to this matter."
He claims that otherwise "a school could circumvent all its
obligations [under the IDEA] by merely calling the police to the
school rather than initiating court proceedings themselves."
However, as the court in *State* v. *Trent N.,* 212 Wis. 2d 728, 738
(1997), points out, "if [a] school is truly engaging in an 'end
run,' that concern can be addressed at the various investigative
and referral levels within the juvenile court system." The 1997
amendment clearly authorizes schools to report criminal activi-
ties to the appropriate authorities. 20 U.S.C. § 1415(k)(9)(A).
Moreover, here the judge ruled that "there was no evidence
. . . to suggest that [the school] called the police to avoid any
responsibilities under [the] IDEA," and the juvenile does not
draw our attention to any facts to the contrary. See generally
Bryant, The Death Knell for School Expulsion: The 1997
Amendments to the Individuals with Disabilities Education Act,
47 Am. U. Law. R. 487 (1998); Hartog-Rapp, The Legal
Standards for Determining the Relationship between a Child's
Handicapping Condition and Misconduct Charges in a School
Disciplinary Proceeding, 1985 S. Ill. U. L.J. 243.

2. *School records: 20 U.S.C. § 1415(k)(9)(B).* The juvenile
further argues that his school violated the 1997 amendment to

the IDEA by failing to provide the police with his school records. The provision at issue is as follows:

> "An agency reporting a crime committed by a child with a disability shall ensure that copies of the special education and disciplinary records of the child are transmitted for consideration by the appropriate authorities to whom it reported the crime."

20 U.S.C. § 1415(k)(9)(B). In support of his motion to dismiss, the juvenile argued that the school's failure to deliver his records to the police department and the failure of the police department "to consider the records in their investigation" violated his "specific procedural rights."

In his order denying the juvenile's motion, the Juvenile Court judge ordered the "school authorities" to provide the Juvenile Court probation officer with "a copy of the defendant's IDEA, special education, and disciplinary records within fourteen . . . days of receipt of [the judge's] order." He opined that "[§] 1415(k)(9)(B) does not say *when* records must be provided," and concluded that the IDEA "recognizes that such records would be relevant for placement and dispositional purposes, hence they may be provided at any stage in the prosecution" (emphasis original).

On appeal, the juvenile argues, without citation to authority or the record, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), that the school "continued to violate the IDEA by summonsing the police without providing them with [the juvenile's] school records . . . [and that] no process was initiated by the school or law enforcement to make a determination of whether the alleged actions resulting in his arrest related to his disability." In fact, the "psychoeducational evaluation" of the juvenile and the notices of his many suspensions were brought to the judge's attention and were attached to the motion to dismiss. There is no claim that the alleged lack of the records affected the delinquency proceedings. Nor is there any support for the juvenile's claim that the school's failure to comply with the IDEA without any showing of prejudice warrants dismissal of a delinquency proceeding brought by a law enforcement agency. Whatever merits there may be in the juvenile's

complaints about his school's response to his claimed disability, this is not one of those rare cases that warrants overriding a District Attorney's authority to decide whether to prosecute a case. See *Commonwealth* v. *Pellegrini*, 414 Mass. 402, 404-405 (1993).

We hasten to note that while this juvenile apparently pressed for release of his records, such records are subject to important privacy rights. See 20 U.S.C. § 1417(c); 34 C.F.R. §§ 300.560-300.577 (2001) (confidentiality of information under the IDEA). The Federal regulations governing the 1997 amendment make clear that "[a]n agency reporting a crime under this section may transmit copies of the child's special education and disciplinary records only to the extent that the transmission is permitted by the Family Educational Rights and Privacy Act." 34 C.F.R. § 300.529(b)(2) (2001). That statute, 20 U.S.C. § 1232g (Supp. 1999), in turn sets out detailed controls on third party access to educational records, as do the regulations promulgated under it. 34 C.F.R. §§ 99.30-99.33 (2001). See *Sean R.* v. *Board of Educ. of Woodbridge*, 794 F. Supp. 467, 469-470 (D. Conn. 1992). See generally Annot., Validity, Construction, and Application of Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232), 112 A.L.R. Fed 1, §§ 13, 14, at 42-48 (1993 & Supp. 2001). Cf. G. L. c. 71B, § 3 (evaluations and assessments of children and special education programs shall remain confidential); 603 Code Mass. Regs. § 23.07(4) (1995) (no third party shall have access to information in or from student records without specific, informed written consent of the eligible student or parents).

3. *Rehabilitation Act.* Although section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, was the focus of his motion to dismiss in Juvenile Court, on appeal the juvenile has little to say about that statute. We therefore deem that issue waived. See *Powers* v. *H.B. Smith Co.*, 42 Mass. App Ct. 657, 664-665 (1997). In any case, there is nothing in § 504 that would lead to a different conclusion on the motion to dismiss. See *Smith* v. *Robinson*, 468 U.S. 992, 1017 (1984) (EDA, the predecessor

statute to the IDEA, "interpreted to be strikingly similar" to § 504 in regard to rights to a public education).[1]

*Finding of delinquency affirmed.*

---

[1]*Smith* v. *Robinson*, *supra*, which precluded awards of compensatory damages and attorney's fees, was overruled by statute. *Board of Educ. of the E. Windsor Regional High Sch. Dist.* v. *Diamond*, 808 F.2d 987, 995 (3d Cir. 1986). Civil remedies are now available under both the IDEA and § 504. See *id.*; 20 U.S.C. § 1415(1); 29 U.S.C. § 794a(a)(2).