

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2007

# A.W. v. Jersey Cty Pub Sch

Precedential or Non-Precedential: Precedential

Docket No. 05-2553

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"A.W. v. Jersey Cty Pub Sch" (2007). *2007 Decisions.* Paper 1024.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1024

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2553

A.W.

v.

THE JERSEY CITY PUBLIC SCHOOLS;
NEW JERSEY DEPARTMENT OF EDUCATION;
JEFFREY V. OSOWSKI, former Director,
Division of Special Education;
BARBARA GANTWERK, Director,
Office of Special Education Programs;
SILVIA ELIAS, former Executive Director of
Pupil Personnel Services;
PRISCILLA PETROSKY, Associate Superintendent
for Special Education;
JOHN IWANOWSKI; MARY HEPBURN;
JOAN EDMISTON; DENISE BRAAK;
MARY MACEACHERN; EDWARD FAUERBACH,
Learning Disabilities Teacher-Consultants;
NORMA CHRISOMALIS; GWENDOLYN JACKSON;
LINDA COLON; RONNE BASSMAN;
WILLIAM RONZITTI; ROXANNE JOHNSON,
Supervisors of Special Education;
SHARNETTE GREEN, Teacher;
MELINDA ZANGRILLO, Coordinator of Compliance;

JANE DOE AND JOHN DOE (1)-(5),
all in their official and individual capacities

New Jersey Department of Education;
Jeffrey V. Osowski;
Melinda Zangrillo;
Barbara Gantwerk,
Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-00140)
District Judge: Honorable Jose L. Linares

_____

Argued July 10, 2006
Before: SLOVITER, McKEE and RENDELL,
Circuit Judges.

Reargued En Banc February 21, 2007
Before: SCIRICA, Chief Judge, SLOVITER, McKEE,
RENDELL, BARRY, AMBRO, FUENTES, SMITH,
FISHER, JORDAN and VAN ANTWERPEN*,
Circuit Judges.

(Filed: May 24, 2007)

_____

* Honorable Franklin S. Van Antwerpen assumed senior status on October 23, 2006 after the case was initially argued and continues to participate in the matter pursuant to I.O.P 9.6.4.

Michael C. Walters    **[ARGUED]**
Office of Attorney General of New Jersey

2

Division of Law
P.O. Box 112
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625
  *Counsel for Appellants*

Stephen M. Latimer
Loughlin & Latimer
131 Main Street, Suite 235
Hackensack, NJ 07601

Elizabeth A. Athos      **[ARGUED]**
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102

Rebecca K. Spar      **[ARGUED - en banc]**
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street - Court Plaza North
P.O. Box 800
Hackensack, NJ  07601
  *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RENDELL, *Circuit Judge.*

In this appeal, we reexamine our holding in *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), that an action can be maintained against school officials under 42 U.S.C. § 1983 for violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* We do so in light of the

Supreme Court's reasoning in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), regarding the availability of § 1983 to redress violations of federal statutory rights and the opinions of our sister courts of appeals that have questioned *Matula*.

The District Court, relying on *Matula*, held that the alleged violations of plaintiff's rights were actionable under § 1983 and denied defendants' motion for summary judgment on the ground of qualified immunity, concluding that plaintiff's cause of action could be maintained and there was sufficient evidence for a jury to find that defendants violated clearly established federal law. We will reverse.

## I. Background

In January 2001, A.W., a dyslexic former student of the Jersey City Public Schools ("JCPS"), filed this action in the United States District Court for the District of New Jersey. A.W. alleged that New Jersey officials failed to comply with federal law and, as a result, deprived him of a free, appropriate public education. In addition to suing JCPS and its officials, A.W. also brought claims against Barbara Gantwerk, Director of the Office of Special Education Programs for the New Jersey Department of Education ("NJDOE"), and Melinda Zangrillo, Coordinator of Compliance at NJDOE, in their personal capacities.[1]

With respect to Gantwerk and Zangrillo, A.W. asserted that, in response to his December 1997 complaint alleging that he had unidentified and untreated dyslexia, Gantwerk and Zangrillo conducted an inadequate investigation and provided

---

[1]A.W. reached a settlement with JCPS and its officials in February 2004.

no relief to A.W., despite ample evidence of A.W.'s disability. In A.W.'s amended complaint,[2] he sought to hold Gantwerk and Zangrillo personally liable under § 1983 for violations of A.W.'s rights under the IDEA and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.

Following the completion of all discovery other than expert depositions, defendants moved for summary judgment on numerous grounds, including qualified immunity and a challenge to the use of § 1983 to remedy the alleged violations of the IDEA and Section 504. On April 21, 2005, the District Court struck A.W.'s claim for declaratory relief and denied summary judgment to the defendants on all other bases. The Court found that the IDEA could be enforced through an action under § 1983 based on our decision in *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir. 1995), wherein we specifically reasoned that § 1983 was available to redress a violation of a student's rights secured by the IDEA. The District Court also rejected defendants' argument that individuals could not be sued under § 1983 for alleged violations of the IDEA and Section 504 because these statutes impose liability only on entities that

---

[2]The procedure leading to the amendment of A.W.'s original complaint was as follows: the NJDOE defendants, including Gantwerk and Zangrillo, filed a motion to dismiss A.W.'s complaint for failure to state a claim upon which relief can be granted, based on sovereign immunity and other grounds. A.W. filed a motion in opposition and also filed a motion to amend his complaint. On March 18, 2002, the District Court issued an order denying the motion to dismiss and granting A.W. leave to file an amended complaint. The defendants appealed this order, which we affirmed, holding that the various defendants had waived sovereign immunity from suit under the IDEA and Section 504 by accepting federal financial assistance. *See A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234 (3d Cir. 2003).

receive federal funding.  Finally, the Court denied defendants qualified immunity because A.W. adduced sufficient proof that defendants had violated A.W.'s clearly established rights under the IDEA and the Rehabilitation Act.  Gantwerk and Zangrillo now appeal.

## II.  Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.  Its order denying qualified immunity comes to us as a "final" order for review under 28 U.S.C. § 1291.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding denial of claim of qualified immunity is appealable as a "final decision").

We will engage in plenary review of a district court's summary judgment ruling on qualified immunity, *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir.), *cert. denied*, 543 U.S. 956 (2004), and apply the same summary judgment standard that guided the district court, *Rivas v. Passaic County*, 365 F.3d 181, 193 (3d Cir. 2004).  A party is entitled to summary judgment when it demonstrates that there is no genuine issue of material fact and that the evidence establishes its entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In considering a motion for summary judgment, we consider all evidence in the light most favorable to the party opposing the motion.  *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995).

## III. Discussion

## A. Qualified Immunity for Statutory Violations

The first issue we confront is whether we should decide the availability of § 1983 relief for the alleged violations of A.W.'s statutory rights as part of the qualified immunity inquiry that is the basis for the appeal before us. We conclude we can, and should.

We have jurisdiction to decide this question because it arises in the course of our analysis of defendants' request for qualified immunity. Under *Saucier v. Katz,* 533 U.S. 194 (2001), a court analyzing a claim of qualified immunity must first ask the "threshold" question: whether the facts alleged show that the official's conduct violated a constitutional right. *Id.* at 201. If the plaintiff's allegations establish the violation of a constitutional right, the violation is necessarily actionable and the court can then proceed to the second inquiry in the *Saucier* analysis: whether the right was "clearly established."[3] *Id.*

Violations of federal statutes, however, are not always actionable. *See Davis v. Scherer,* 468 U.S. 183, 194 n.12 (1984) ("[O]fficials sued for violations of rights conferred by a statute or regulation . . . become liable for damages only to the extent that there is a clear violation of the statutory rights *that give rise to the cause of action for damages.*" (emphasis added)). Thus, the availability of § 1983 to remedy the alleged violations of A.W.'s statutory rights is part and parcel of our "threshold"

---

[3]The official's conduct in *Saucier* allegedly violated the plaintiff's Fourth Amendment rights and was actionable pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). The analysis in *Saucier* is equally applicable to actions for alleged constitutional violations brought pursuant to § 1983. *See Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).

7

inquiry into defendants' qualified immunity defense.[4]   This inquiry parallels the constitutional or "threshold" inquiry in the *Saucier* two-part qualified immunity analysis applied to constitutional claims.[5]   *See Brosseau v. Haugen*, 543 U.S. 194, 198 n.3 (2004) (per curiam) (labeling the first inquiry in *Saucier* two-step analysis as the "constitutional question").

In fact, we cannot imagine a qualified immunity inquiry involving statutory rights that does not include an inquiry into the availability of relief and the existence of a cause of action along with an inquiry into the existence of the violation itself. This would be a useless act.  We cannot conceive of why we should subject the state actors here to a trial when the right of

---

[4]A.W. has not brought claims against defendants directly under the IDEA or Section 504.  Appellee Br. 15.  We therefore need not address whether defendants could be sued directly under these statutes, rather than under § 1983.

[5]We also think that it can be said that the question of whether § 1983 is available to remedy violations of the IDEA and Section 504 is "'inextricably intertwined' with the issue of qualified immunity, that is, . . . its review is 'necessary to ensure meaningful review' of the qualified immunity issue," and that we therefore have jurisdiction over this aspect of the District Court's order.  *See Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir. 2005); *see also Farm Labor Org. Comm. v. Ohio State Highway Patrol*,  308 F.3d 523, 549 (6th Cir. 2002) ("Under the doctrine of pendent appellate jurisdiction, . . . a court of appeals may, in its discretion, 'exercise jurisdiction over issues that are not independently appealable when those issues are "inextricably intertwined" with matters over which the appellate court properly and independently has jurisdiction.'") (quoting *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998); *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995)).

the plaintiff to sue is questionable. It makes little or no sense.[6] The privilege of qualified immunity is "effectively lost if a case is erroneously permitted to go to trial." *Saucier*, 533 U.S. at 201 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Here, the District Court followed our decision in *Matula*, where we held that violations of IDEA-created rights are actionable under § 1983.[7] *Matula*, 67 F.3d at 494. Concluding that it was bound by *Matula* to so rule, the District Court noted that "only one judicial body is able to overrule Third Circuit precedent, and this Court is not it." *A.W. v. Jersey City Pub. Schs.*, No. 01-140, slip op. at 14 (D.N.J. Apr. 21, 2005). In light of the recent, clear guidance provided by the Supreme Court in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), regarding the availability of § 1983 to remedy statutory violations, and the well-reasoned opinions of the Courts of Appeals for the Fourth and Tenth Circuits in *Sellers v. School Board of Manassas, Virginia*, 141 F.3d 524 (4th Cir. 1998), and *Padilla v. School District No. 1*, 233 F.3d 1268, 1273 (10th Cir.

---

[6]The Court of Appeals for the Second Circuit in a strikingly similar situation has also viewed the issue of the availability of relief as a threshold issue and, concluding that § 1983 was not available to remedy the alleged statutory violations, dismissed an appeal of a denial of qualified immunity as moot. *See Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005). We choose a different approach, ending up with the same result.

[7] The District Court did not specifically address whether the alleged Section 504 violations were actionable under § 1983, perhaps because defendants focused their arguments on the alleged IDEA violations. We address this issue, however, because determining whether an alleged statutory violation is actionable is part and parcel of our "threshold" inquiry into defendants' qualified immunity defense.

2000), rejecting our holding in *Matula*, we now conclude that we should not continue to adhere to the principle we established in *Matula*.

## B. *W.B. v. Matula*

*Matula* involved the precise issue before us: can school officials be sued pursuant to § 1983 based on alleged violations of a child's rights secured by the IDEA. In addressing this question, we strove to determine Congress' intent, noting the distinction regarding the use of § 1983 to redress statutory, rather than constitutional, violations:

> When the rights at issue are statutory, however, a § 1983 action is impermissible when "Congress intended to foreclose such private enforcement." *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 423 (1987). Such an intent is generally found either in the express language of a statute or where a statutory remedial scheme is so comprehensive that an intent to prohibit enforcement other than by the statute's own means may be inferred. *Id.*

*Matula*, 67 F.3d at 493.

In *Matula*, we concerned ourselves with the jurisprudential and legislative directives regarding the availability of relief for IDEA violations. We noted that in *Smith v. Robinson*, 468 U.S. 992 (1984), the Supreme Court held that the IDEA[8] provided the exclusive means by which parents

---

[8]The *Smith* decision refers to the Education of the Handicapped Act ("EHA"). Congress changed the name of the statute to the Individuals with Disabilities Education Act

10

and children could remedy violations of the rights guaranteed therein, and that no constitutional claim would be therefore allowed. *Id.* at 1012-13. In *Smith*, the plaintiff sought to bring a § 1983 claim for violation of his constitutional rights and a claim under Section 504 of the Rehabilitation Act, both based on conduct that also allegedly violated the plaintiff's rights under the IDEA. *Id.* at 1003. The Court held that, although the plaintiff could have brought a § 1983 or Section 504 claim to remedy injuries not cognizable under the IDEA, an action under the IDEA was the exclusive means to seek redress for injuries actionable thereunder. *Id.* at 1009. However, in response to this decision, Congress enacted § 1415(*l*) of the IDEA, to countermand *Smith* and make clear that actions *can* be maintained under the Constitution or under federal laws protecting the rights of children with disabilities notwithstanding the fact that the IDEA also protects these rights. This provision reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

---

("IDEA") in 1990. *See* Pub. L. No. 101-476, 104 Stat. 1141 (1990). To avoid confusion, we refer to the statute throughout this opinion as the IDEA.

11

20 U.S.C. § 1415(*l*).[9]

In an attempt to ascertain the significance of Congress' addition of this provision, we reviewed its legislative history in some detail:

> The Senate Report [on § 1415(*l*)] discussed *Smith* at length, including quoting favorably from the *Smith* dissent, *see* S.Rep. No. 99-112, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1799 ("Senate Report"). The House Conference Report stated "[i]t is the conferees' intent that actions brought under 42 U.S.C. 1983 are governed by [§ 1415(*l*)]." H.R.Conf.Rep. No. 99-687, 99th Cong., 2d Sess. (1986); 1986 U.S.C.C.A.N. 1807, 1809. In addition, the House Report made explicit that "since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, *and section 1983*. . .. Congressional intent was ignored by the U.S. Supreme Court when . . . it handed down its decision in *Smith v. Robinson*." H.R.Rep. No. 99-296, 99th Cong., 1st Sess. 4 (1985) ("House Report") (first emphasis added). Section 1415[(*l*)] was thus enacted to "reaffirm, in light of [ *Smith* ], the viability of section 504, 42 U.S.C 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." *Id.*

*Id.* at 494. In *Matula*, we concluded that "[f]ar from inferring a

---

[9]At the time we decided *Matula*, this provision was codified at 20 U.S.C.§ 1415(f). Throughout this opinion, we refer to it at its current location in the Code, § 1415(*l*).

12

congressional intent to *prevent* § 1983 actions predicated on IDEA then, we conclude that Congress explicitly *approved* such actions." *Id.*

Also underlying our ruling in *Matula* was the Supreme Court's statement in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66 (1992), that "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." Given this presumption, we searched for some "clear direction" in the text or history of the IDEA indicating that we were to limit the relief available and, finding none, we held that:

> the traditional presumption in favor of all appropriate relief is not rebutted as to § 1983 actions to enforce IDEA. Defendants have identified no "clear direction" in the text or history of IDEA indicating such a limitation, and indeed there is strong suggestion that Congress intended no such restriction. Certainly the plain language of § 1983 authorizes actions at law or equity, and our prior holding in *Diamond* compels the conclusion that, as a matter of law, an aggrieved parent or disabled child is not barred from seeking monetary damages in such an action.

*Id.* at 495. We should note that we were not alone in this view at the time, as we cited to numerous other courts' opinions that approved § 1983 actions to enforce IDEA rights. *See id.* (collecting cases).

However, following *Matula*, reasonable minds have differed as to the correctness of our interpretation of the congressional reaction to *Smith v. Robinson* embodied in § 1415(*l*). In addition, over the past decade, the Supreme Court

13

has further refined its guidance as to how we should decide whether § 1983 relief is available for violations of statutory rights, most recently in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005). All of these developments since *Matula* have informed our analysis in a way that requires us to reconsider our view.

The Courts of Appeals for the Fourth and Tenth Circuits have taken issue with our reading of § 1415(*l*) and discernment of Congress' intent in enacting it. They note that the provision does not refer to § 1983; rather, it focuses on substantive rights.[10] In *Sellers v. School Board of Manassas, Virginia*, 141 F.3d 524 (4th Cir. 1998), and *Padilla v. School District No. 1*, 233 F.3d 1268, 1273 (10th Cir. 2000), the Courts of Appeals for the Fourth and Tenth Circuits, respectively, challenged our analysis of the congressional enactment of § 1415(*l*) in reaction to *Smith*. In *Sellers*, the Fourth Circuit Court of Appeals concluded that a "closer reading" of the new provision "reveals no intent that parties be able to bypass the remedies provided in IDEA by suing instead under Section 1983 for an IDEA violation." 141 F.3d at 530. Deciphering § 1415(*l*), the court noted that it specifically refers to the preservation of remedies available under the Constitution, the Rehabilitation Act, and

---

[10]Several district courts have also made this observation. *See, e.g., Carney v. Nevada*, No. 05 Civ. 713, 2007 WL 777697, at *3 (D. Nev. Mar. 12, 2007); *Alex G. v. Bd. of Trustees of Davis Joint Unified Sch. Dist.*, 332 F. Supp. 2d 1315, 1318-19 (E.D. Cal. 2004) ("[I]t appears that Congress intended to permit § 1983 suits to enforce rights secured independently of the IDEA. But this does not mean that Congress also intended to allow plaintiffs to use § 1983 to enforce the IDEA, thereby foregoing the various procedural and remedial requirements and restrictions that exist when a claim is brought under the IDEA.").

"other statutes protecting the rights of disabled children." Section 1983 "speaks generally and mentions neither disability nor youth." *Id.* The court concluded:

> By preserving rights and remedies "under the Constitution," section 1415[(*l*)] does permit plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA. But section 1415[(*l*)] does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is *statutory* in nature. Nothing in section 1415[(*l*)] overrules the Court's decision in *Smith* to the extent it held that Congress intended IDEA to provide the sole remedies for violations of that same statute.

*Id.* (internal citations omitted). The court further disagreed with the notion that the legislative history reveals the requisite intent to permit § 1983 suits merely because § 1983 is referred to in the House Reports. *Id.* at 531. The court concluded that insofar as one of the specific substantive provisions preserved in § 1415(*l*) is the Constitution, it was not surprising that the legislative history referenced § 1983, which provides a vehicle for redressing violations of constitutional rights. *Id.* "When construed in their most natural form, the excerpts demonstrate the unremarkable proposition that Congress intended section 1415[(*l*)] to restore the ability of disabled children and their parents or guardians to utilize section 1983 to protect constitutional rights." *Id.*[11]

---

[11]In *Sellers*, the court also called upon an interpretive rule whereby, because the IDEA was enacted pursuant to Congress' spending power, the statutory response to *Smith* should not be read to impose liability on state officials unless it is

15

In *Padilla*, the Court of Appeals for the Tenth Circuit noted that the issue had created a circuit split. *Padilla*, 233 F.3d at 1273 (comparing *Sellers* with *Matula* and *Marie O. v. Edgar*, 131 F.3d 610, 620-22 (7th Cir. 1997)). The court agreed with the reasoning in *Sellers* that subsequent amendments to the IDEA "left intact *Smith*'s implication that the [IDEA] may not provide the basis for § 1983 claims." *Id.* The court also noted that the Supreme Court had twice since the passage of § 1415(*l*) referenced the IDEA as an example of a legislative enforcement scheme that *precludes* a § 1983 remedy. *Id.* (citing *Blessing v. Freestone*, 520 U.S. 329, 347-48 (1997); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423-24, 427 (1987)). Thus, the court in *Padilla* not only disagreed with our view of § 1415(*l*), but also our view that there was no apparent limitation on the availability of relief for violations of the IDEA by way of § 1983.

Were we deciding this case in the year 2001, after these courts had voiced their disagreement with *Matula*, we might be conflicted as to whether to revisit the issue. On the one hand, the Courts of Appeals for the Fourth and Tenth Circuits offered the convincing arguments, noted above, as to how Congress' enactment of § 1415(*l*) did not provide for § 1983 as a remedial tool here, and as to how our analysis with respect to the availability of relief in *Matula* was incomplete in light of other Supreme Court cases. On the other hand, several other courts had expressed views similar to ours in *Matula*, or had assumed § 1983 to be available.[12] While the former may have tipped the

unambiguous. The court found a lack of the requisite clarity, in that § 1415(*l*) does not state or imply that § 1983 suits may be brought for IDEA violations. 141 F.3d at 530.

[12] The courts that have concluded that Congress intended to allow recourse to § 1983 to remedy IDEA violations have based their reasoning on the same reading of the legislative history of

scales somewhat towards rethinking *Matula* even then, the Supreme Court's discussion of the availability of § 1983 as a vehicle for redressing violations of federal statutory rights in *Rancho Palos Verdes*, 544 U.S. 113, has tipped them definitively, and we are now convinced that our ruling in *Matula*

---

the IDEA that we adopted in *Matula*. *See Marie O. v. Edgar*, 131 F.3d 610, 620-22 (7th Cir. 1997) (relying on § 1415(*l*) and holding that Congress did not foreclose the enforcement of Part H of the IDEA through § 1983); *Digre v. Roseville Schs.*, 841 F.2d 245, 250 (8th Cir. 1988) (holding § 1983 is available to remedy IDEA and constitutional violations, as a result of the passage of § 1415(*l*)). The Court of Appeals for the Second Circuit has also allowed IDEA-based § 1983 claims to proceed, but without acknowledging that violations of statutory rights are not actionable under § 1983 if Congress did not so intend. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 151 (2d Cir. 2002) (reinstating § 1983 claim because plaintiff stated a cause of action under the IDEA, but not addressing whether IDEA violations were actionable under § 1983); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir. 1987) (finding that money damages are available in § 1983 action based on IDEA violation, but not addressing whether Congress intended § 1983 to provide a remedy for IDEA violations). Finally, some courts of appeals have not clearly decided whether § 1983 is available only to remedy violations of the constitutional rights of children with disabilities, or also to remedy violations of IDEA-created rights. *See Gean v. Hattaway*, 330 F.3d 758, 773 (6th Cir. 2003) (noting that IDEA claims can "in some circumstances" be brought under § 1983 and citing case in which § 1983 action was brought to remedy violations of disabled student's constitutional rights); *Angela L. v. Pasadena Ind. Sch. Dist.*, 918 F.2d 1188, 1193 n.3 (5th Cir. 1990) (stating in dicta that aggrieved parents of disabled children can still "obtain relief" through § 1983, as a result of the passage of § 1415(*l*)).

17

is no longer sound.

**C.** *Rancho Palos Verdes*

*Rancho Palos Verdes,* 544 U.S. 113, is the most recent Supreme Court pronouncement on the availability of § 1983 to redress violations of federal statutes, and it provides the best guidance in this area. It is interesting to note what had, and had not, been said by the Supreme Court about the use of § 1983 prior to *Rancho Palos Verdes*, and prior to *Matula*. It is also interesting to note that *Franklin*, the case we relied upon so heavily in *Matula*, was not a § 1983 case at all; rather, it focused on whether damages could be recovered in an action to enforce Title IX. Thus, the idea that "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise," *Franklin,* 503 U.S. at 66, was not a concept developed in the Supreme Court's § 1983 jurisprudence.

The Supreme Court held many years before *Matula* that violations of certain federal statutory rights are actionable under § 1983. *See Maine v. Thiboutot*, 448 U.S. 1 (1980). Then, in 1987, the Supreme Court decided in *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418 (1987), that the administrative enforcement scheme of the Housing Act did not demonstrate that Congress had specifically foreclosed a remedy under § 1983 for the alleged violations of that statute. In so doing, the Court rejected the notion that the Department of Housing and Urban Development had the exclusive power to enforce the benefits due housing project tenants. It noted that in two cases the Court had found "an intent to foreclose resort to § 1983" where there was a "comprehensive remedial scheme provided by Congress, a scheme that itself provided for private actions and left no room for additional private remedies under § 1983":

In [*Middlesex County Sewerage Authority v.*

18

> *National Sea Clammers Ass'n*, 453 U.S. 1
> (1981)], an intent to foreclose resort to § 1983
> was found in the comprehensive remedial scheme
> provided by Congress, a scheme that itself
> provided for private actions and left no room for
> additional private remedies under § 1983.
> Similarly, *Smith v. Robinson,* 468 U.S. 992, 1012,
> 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984),
> held that allowing a plaintiff to circumvent the
> Education of the Handicapped Act's
> administrative remedies would be inconsistent
> with Congress' carefully tailored scheme, which
> itself allowed private parties to seek remedies for
> violating federal law.

479 U.S. at 423. But the Court then went on to state that "'[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Id.* at 423-24 (quoting *Smith*, 468 U.S. at 1012). In a 5-to-4 decision, the Court ruled that § 1983 was an available remedy for housing authority tenants whose rights under the rent ceiling provision of the Housing Act were allegedly violated. *Id.* at 429.

It was not until after our decision in *Matula* that the Supreme Court offered us more precise guidance as to restrictions on the availability of § 1983, stating that "[e]ven if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). In *Blessing*, the Court noted that there could be an "implied" foreclosure of a § 1983 right of action if the statute contains a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 341 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994)).

19

The Court again referred to *Sea Clammers* and *Smith*. Specifically referencing the reasoning in *Smith*, the Court noted that "[w]e reasoned that Congress could not possibly have wanted parents to skip these procedures and go straight to court by way of § 1983, since that would have 'render[ed] superfluous most of the detailed procedural protections outlined in the statute.'" *Id.* at 347 (citing *Smith*, 468 U.S. at 1011). The Court then distinguished this type of scheme from those before it in two other cases, *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103 (1989), and *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498 (1990), where the "oversight powers" of state officials and "limited grievance procedures for individuals" did not amount to the "administrative enforcement arsenal" in *Smith* and *Sea Clammers*. *Blessing*, 520 U.S. at 348.

Then, in *Rancho Palos Verdes*, 544 U.S. 113, the Supreme Court examined whether Congress meant the remedy available under § 1983 to coexist with the remedy expressly authorized by the Telecommunications Act of 1996[13] for the alleged violations of the plaintiff's rights under the Act. *Id.* at 120-21. The plaintiff in *Rancho Palos Verdes* had applied to the City Planning Commission for a permit to allow commercial use of his radio antenna. *Id.* at 1456. After the permit application was denied, the plaintiff sued for injunctive relief under § 332(c)(7)(B)(v) of the Communications Act and for money damages and attorneys' fees under § 1983 and 42 U.S.C. § 1988. *Id.* at 118. The Supreme Court concluded that § 1983 was not available to redress the alleged violations of the plaintiff's statutory rights.

The Court reiterated that to sustain a § 1983 action for the violation of a statutory right, a plaintiff must demonstrate that

---

[13]The Telecommunications Act amended the Communications Act of 1934 to include § 332(c)(7).

the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). This demonstration creates a rebuttable presumption that the right is enforceable under § 1983. However, the "defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Rancho Palos Verdes*, 544 U.S. at 120. "[E]vidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

In discussing its prior decisions on the availability of § 1983 as a remedy for violations of statutory rights, the Court noted that in *all* of the cases in which it found § 1983 available to provide a remedy for a violation of statutory rights, the statute at issue did not contain a private judicial remedy (or, in most of the cases, even a private administrative remedy). *Id.* at 121. The Court also reminded us yet again that it had found that § 1983 was not an available remedy for violation of statutory rights in only two prior cases: *Sea Clammers* and *Smith*. In both of those cases, express, private means of redress were provided for in the statutes themselves. *Id.* at 121.

The Court noted the significance of Congress' inclusion of private remedial provisions in the statute: it is ordinarily an indication that Congress did not intend "to leave open a more expansive remedy under § 1983." *Id.* However, the "ordinary inference that the remedy provided in the statute is exclusive" can be overcome by "textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* at 122. In framing the issue in this way, the Court seems to have upended the *Blessing* "presumption," with the inclusion of a private remedy being the pivotal factor. The inclusion of a private remedy gives rise to a presumption that this remedy is to

be exclusive.  This presumption may be defeated by a "textual" showing that the remedy was not intended to be comprehensive.

The Court found that the Telecommunications Act did provide an express, private judicial remedy and that there was no textual indication that the remedy provided was meant "to complement, rather than supplant, § 1983." *Id.*  The Court also noted that the remedy made available by the Telecommunications Act "adds no remedies to those available under § 1983, and limits relief in ways that § 1983 does not." *Id.* at 122.  The Court finally dismissed the plaintiff's argument that the "savings clause" in the Telecommunications Act was an express statement of Congress' intent not to preclude an action under § 1983.  *Id.* at 126.  The Court concluded that the clause did not require a court to permit enforcement of the Act under § 1983, but rather underscored Congress's intent that "the claims available under § 1983 prior to the enactment of the [Communications Act] continue to be available after its enactment." *Id.*

## 1. The IDEA

Guided by the method of analysis outlined in *Rancho Palos Verdes*, we now look to the IDEA to determine whether Congress intended to allow rights granted by the IDEA to be remedied through a § 1983 action.  For purposes of this appeal, the parties do not dispute that the IDEA creates individually enforceable rights in the class of beneficiaries to which A.W. belongs.  Therefore, we presume that Congress intended § 1983 to be an available remedy for violations of the IDEA. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  Defendants, however, can rebut this presumption by showing that Congress did not so intend.  Accordingly, we look to whether there is an express, private means of redress in the IDEA itself, which, absent some textual indication to the contrary, would indicate that Congress

22

did not intend to leave open a more expansive remedy under § 1983. *See Rancho Palos Verdes*, 544 U.S. at 121.

Under the IDEA, any aggrieved party may "present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The party may elect to have the complaint investigated by the state educational agency, *see* 34 C.F.R. § 300.661, or avail itself of an "impartial due process hearing," 20 U.S.C. § 1415(f). Any party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). This action must be initiated within 90 days from the date of the hearing officer's decision. § 1415(i)(2)(B). The district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education. *See* 20 U.S.C. § 1415(i)(3)(B)(i) (attorneys' fees); *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 470 (1985) (reimbursement)*; Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990) (compensatory education). We conclude that these provisions of the IDEA create an express, private means of redress. This, then, means that a § 1983 action is not available to remedy violations of IDEA-created rights, absent some "textual indication, express or implicit, that the [statutory] remedy is to complement, rather than supplant, § 1983." *Rancho Palos Verdes*, 544 U.S. at 122.

A.W. argues that the "ordinary inference that the remedy provided in the statute is exclusive" is overcome by the "textual indication" in § 1415(*l*) of the IDEA that the remedies provided for in the statute are "to complement, rather than supplant, § 1983." *Id*. However, finding the reasoning of *Sellers* and

23

*Padilla* convincing, we do not agree that § 1415(*l*) shows that Congress intended the remedies in the IDEA to complement, rather than supplant, § 1983. Just like the savings clause in *Rancho Palos Verdes*, this provision merely evidences Congress' intent that "the claims available under § 1983 prior to the enactment of the [Act] continue to be available after its enactment." *Id*. at 126. We also reject A.W.'s contention that the references to § 1983 in the legislative history of § 1415(*l*)[14] show that Congress intended to preserve the availability of § 1983 to remedy violations of IDEA-created rights, as we concur with the explanation of those references provided in *Sellers*. *See Sellers*, 141 F.3d at 531 (concluding that, insofar as § 1415(*l*) preserved actions based on violations of constitutional rights, it is not surprising that the legislative history referenced § 1983, which provides a vehicle for redressing violations of constitutional rights).

We agree with the reasoning of the Courts of Appeals for the Fourth and Tenth Circuits, to say nothing of that of the

---

[14]The Court's opinion in *Rancho Palos Verdes* did not address the legislative history of the Telecommunications Act, nor discuss whether it is appropriate to consider a statute's legislative history as evidence of what Congress intended. However, Justice Stevens suggested in his concurrence in *Rancho Palos Verdes* that the Court assumed "that the legislative history of the statute is totally irrelevant" in discerning whether Congress intended to allow § 1983 actions. 544 U.S. at 131 (Stevens, J., concurring). It is therefore not clear whether a statute's legislative history qualifies as the sort of "textual indication, explicit or implicit," *id*. at 122, that may guide us in determining whether Congress intended a statute's remedy to be exclusive of § 1983. We need not decide this question, however, as the legislative history provides no additional support for A.W.'s position.

24

Supreme Court in *Smith*, regarding the comprehensive nature of the IDEA's remedial scheme. The holding in *Smith*, although superseded in part by the passage of § 1415(*l*) of the IDEA, was not overruled to the extent that the Court found that the IDEA provides a comprehensive remedial scheme. Indeed, since *Smith*, the Court has continued to refer to the IDEA as an example of a statutory enforcement scheme that precludes a § 1983 remedy. *See Rancho Palos Verdes*, 544 U.S. at 121; *Blessing v. Freestone*, 520 U.S. 329, 347-48 (1997); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423-24, 427 (1987). The IDEA includes a judicial remedy for violations of any right "relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child." § 1415(b)(6). Given this comprehensive scheme, Congress did not intend § 1983 to be available to remedy violations of the IDEA such as those alleged by A.W.

## 2. Section 504

Similarly, we must examine Section 504 of the Rehabilitation Act to determine whether Congress intended to allow rights granted therein to be remedied through a § 1983 action. We look first to what means of redress are available under the statute itself.

The Rehabilitation Act adopts the scheme of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," 42 U.S.C. § 2000d *et seq*., to remedy alleged

violations of Section 504 by recipients of federal funding.[15]  29 U.S.C. § 794a(a)(2).  Title VI provides for federal funding to be terminated if an entity receiving assistance fails to comply with its requirements.  42 U.S.C. § 2000d-1.  Title VI does not, however, contain an express private right of action.  Rather, the Supreme Court has found an *implied* right of action under the statute and Congress has acknowledged this right in amendments to the statute, "leaving it 'beyond dispute that private individuals may sue to enforce' Title VI."  *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (quoting *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001)).  "Thus Congress, in essence, provided a private right of action under Section 504 by incorporating Title VI's 'remedies, procedures, and rights' into the statute."  *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425-26 (3d Cir. 2004).

The remedies for violation of Section 504 "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." *Gorman*, 536 U.S. at 185.  These remedies include

---

[15]For some employment-related claims, the Rehabilitation Act incorporates the remedial scheme provided by Title VII of the Civil Rights Act, rather than that of Title VI.  29 U.S.C. § 794a(a)(1).  Title VII, unlike Title VI, mandates that aggrieved employees exhaust certain EEOC procedures prior to filing an action in court.  Several of the decisions cited by defendants are therefore easily distinguishable because they examine the remedial scheme provided by Title VII, rather than Title VI.  *See Lollar v. Baker*, 196 F.3d 603, 610 n.8 (5th Cir. 1999); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997); *see also Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) (relying on *Lollar* in non-employment case without acknowledging that Title VI, rather than Title VII, procedures are used for non-employment related complaints under Section 504).

26

compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract. *See id.* at 187. Punitive damages are not available. *Id.* Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals. *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002).

It is beyond question that Section 504's remedial scheme is far less detailed than the IDEA's remedial scheme. *See Powell v. Ridge*, 189 F.3d 387, 402 (3d Cir. 1999) (suggesting that Title VI, unlike the IDEA, does not establish "an elaborate procedural mechanism to protect the rights of [individual plaintiffs]"), *abrogated on other grounds by S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777-78 (3d Cir. 2001). However, we disagree with A.W.'s argument that "there is simply no remedial scheme at all that governs Section 504." Appellee Supp. Br. 20. Even though there is no express, private right of action within Section 504, Congress clearly incorporated, through adoption of Title VI's remedial scheme, a private, judicial remedy for violations of the statute. The availability of a judicial remedy for the alleged statutory violations carries significant weight in our analysis of whether Congress intended to allow violations of Section 504 to be actionable under § 1983. We must determine whether the existence of this remedy carries with it the presumptive force set forth in *Rancho Palos Verdes*.

The Court of Appeals for the Seventh Circuit has held that the remedial scheme in Title VI is comprehensive, and that Congress did not intend to allow violations of Title VI to be remedied through § 1983. *See Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985); *see also Travis v. Folsom Cordova Unified Sch. Dist.*, No. 06 Civ. 2074, 2007 WL 529840, at *4 (E.D. Cal. Feb. 20, 2007); *Alexander v. Underhill*, 416 F. Supp. 2d 999 (D. Nev. 2006). The Court of Appeals for the Second Circuit has similarly found that the Title IX remedial

27

scheme, which is almost identical to the Title VI scheme, is comprehensive. *See Bruneau v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756 (2d Cir. 1998). Title IX, which is patterned after Title VI, also contains an implied private right of action, but no express, private judicial remedy. *See Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979). In *Bruneau*, the court "looked to more than just the express remedies contained within [Title IX]," including Congress's plan to create a private right of action as a remedy to secure the enforcement of the statute's provisions, "to ascertain fully Congress' purpose." *Id.* After reviewing Title IX's administrative and judicial remedies, the court concluded that Congress intended "that a claimed violation of Title IX be pursued under Title IX and not § 1983." *Id.*; *see also Henkle v. Gregory*, 150 F. Supp. 2d 1067, 1073-74 (D. Nev. 2001) ("Given the Supreme Court decisions and the intervening congressional action, we conclude that Congress intended to create a private right of action in Title IX to secure enforcement of its provisions and that this implied right of action is part of Title IX's enforcement scheme. When combining Title IX's administrative remedies and private right of action, 'the remedial devices provided in [Title IX] are sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983.'").

We recognize that two of our sister courts of appeals have concluded that the remedial scheme in Title IX is not comprehensive. *See Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir. 1996). These courts, however, did not consider the implied private right of action under Title IX as part of the statute's "remedial scheme." We disagree with this approach. Nothing in *Rancho Palos Verdes* or in the Supreme Court's prior decisions on this subject suggests that a statute's "remedial scheme" encompasses only those remedies that are expressly identified in the statute. Implied private rights of action, like express rights of actions, provide a means for private

litigants to remedy violations of their statutory rights. The difference between implied and express private rights of action is that the former are implicit in Congress's enactments, rather than apparent on their face. We do not consider this difference to be meaningful.

We find the reasoning of the Courts of Appeals for the Seventh and Second Circuits regarding the nature of the remedial scheme under Section 504 to be more persuasive. Following *Rancho Palos Verdes*, we will ordinarily infer that when a private, judicial remedy is available for alleged statutory violations, this remedy is intended to be exclusive. *See Rancho Palos Verdes*, 544 U.S. at 121. There is nothing in Section 504 that undercuts this inference or causes us to conclude that Congress intended to allow § 1983 to be available to remedy Section 504 violations such as those alleged by A.W. *See Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 23 (D.D.C. 2006); *Veal v. Mem'l Hosp. of Wash. County*, 894 F. Supp. 448, 454 (M.D. Ga. 1995). There is no showing that the remedial scheme in Section 504 was intended "to complement, rather than supplant, § 1983." *Rancho Palos Verdes*, 544 U.S. at 122. Accordingly, we conclude that § 1983 is not available to provide a remedy for defendants' alleged violations of A.W.'s rights under Section 504.

## IV. Conclusion

A.W. has not alleged an actionable violation of his rights under the IDEA or Section 504. Accordingly, we will reverse the order of the District Court denying defendants' motion for qualified immunity and remand to the District Court for entry of judgment in favor of defendants.