Filed 7/13/21  A.Z. v. Santa Maria Joint Union High School District CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| A.Z.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SANTA MARIA JOINT UNION HIGH SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | 2d Civil No. B306374<br>(Super. Ct. No. 19CV00978)<br>(Santa Barbara County) |

When appellant was a fifteen-year-old high school student, she suffered traumatic brain injury.  The school district, despite an effort to provide her a free appropriate education, allegedly failed to do so.  She sues only for monetary damages alleging a violation of her federal civil rights guaranteed by the "Americans with Disability Act" and the "Rehabilitation Act of 1973."  At no time did she exhaust her administrative remedy to require the school district to cure its alleged "failure" to adequately provide her with a free appropriate education.  This is fatal to the instant lawsuit.  We are compelled to affirm.

A.Z. appeals from the judgment entered in favor of Santa Maria Joint Union High School District (District) after the trial court had sustained District's demurrer without leave to amend. When the judgment was entered in April 2020, appellant was 19 years old. She claims that, as the result of a fall in 2015, she suffered a traumatic brain injury (TBI). Her complaint consists of a single cause of action alleging that she suffered permanent injury because, in violation of federal law, District failed to provide educational services tailored to meet her TBI.

*The Complaint*

Appellant was a student at Earnest Righetti High School within the District. The complaint alleged that in August 2015 she "was diagnosed" with a TBI.[1] District "was notified of the TBI . . . and . . . identified [her] as disabled and issued her first section 504 plan, without having conducted any assessment or evaluation." Section 504 (29 U.S.C. § 794) is part of the Rehabilitation Act of 1973. The section "protects handicapped persons of all ages from discrimination in a variety of programs and activities receiving federal financial assistance." (*Smith v. Robinson* (1984) 468 U.S. 992, 1017, overturned by statute on another ground as stated in *Fry v. Napoleon Community Schools* (2017) __ U.S. __ , [137 S.Ct. 743, 746, 750] (*Fry*).) Section 504 has been interpreted "as requiring a recipient of federal funds that operates a public elementary or secondary education program to provide a free appropriate public education [FAPE] to each qualified handicapped person in the recipient's jurisdiction."

---

[1] Appellant claims she incurred the TBI in August 2015 when she fell while running at a camp for high school cheerleaders in San Diego.

(*Ibid.*; see *Mark H. v. Lemahieu* (9th Cir. 2008) 513 F.3d 922, 930.)

The complaint continued: District "failed to comply with . . . statutory mandates in preparing [appellant's] section 504 plans in that it performed no assessment or evaluation." Her "section 504 plans . . . recommended accommodations negligently based on the "best guess" of unqualified personnel as to what the general class of students with TBI would need. This approach did not and cannot comply with the mandates for assessment and evaluation because students with TBI will present with different needs for support based on what part of the brain is affected, time since injury, associated symptoms, and how the injury has impacted the student's ability to think and learn."

"Due to District's deliberate refusal to meet [appellant's] disability mandated and medically ordered academic modifications . . . , appellant fell behind and had to transfer to Delta High School during her Junior year to try to catch up. . . . [She] did not catch up. Prior to her senior year, [appellant] was finally evaluated by [a] neuropsychologist who documented the cluster of symptoms typical of TBI even two years post injury, and made a report from which appropriate modifications could be designed. . . . [But] District washed it[s] hands of [appellant] by simply graduating her early without qualified testing results . . . ."

The complaint alleged only a single cause of action – denial of appellant's civil rights in violation of 42 U.S.C. § 1983. It stated: District "failed and refused to comply with disability accommodation mandates required by the ADA [Americans with Disabilities Act] and the Rehabilitation Act of 1973." District "was negligent in that it failed to comply with the standards of

3

care mandated by the Rehabilitation Act of 1973, Section 504, and the Individuals with Disabilities Education Act [(IDEA – 20 U.S.C. §§ 1400 et seq.)]." "As a direct and proximate result of District's failure and refusal to comply with . . . statutory mandates, [appellant's] documented disabilities were exacerbated and her TBI recovery stunted. Consequently, [she] has suffered, and will continue to suffer, permanent physical, mental, and emotional injury. Upon graduation in 2018, [she] was unable to manage basic math, could not manage her own money, and was unable to drive. Due to the worsened condition of her disabilities, [she] is unemployable and will require medical and supportive care for the rest of her life . . . ." In its prayer for relief, the complaint seeks special and general damages according to proof.

*Trial Court's Ruling on Demurrer*

In its order sustaining the demurrer without leave to amend, the trial court ruled: "The gravamen of this case is for permanent injury allegedly caused by [District's] failure to comply with statutory mandates of the Individuals With Disabilities Education Act ('IDEA'). The IDEA provides relief solely for the denial of a free appropriate public education ('FAPE'). The administrative exhaustion requirements set forth in the IDEA apply in any action based on the denial of a FAPE. . . . [Appellant] has not exhausted the required administrative remedies, and her claims against [District] cannot proceed until such time as she has done so."[2]

---

[2] "Welcome to—and apologies for—the acronymic world of federal legislation." (*Fry, supra*, 137 S.Ct. at p. 749; see *B.H. v. Manhattan Beach Unified School Dist.* (2019) 35 Cal.App.5th 563, 568, fn. 1 (*B.H.*) ["In the literature and decisions discussing the IDEA, many important statutory terms are abbreviated using

The IDEA "offers federal funds to States in exchange for a commitment to furnish a [FAPE] to children with certain disabilities, [citation], and establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE." (*Fry*, *supra*, 137 S.Ct. at p. 746.)

### Fry v. Napoleon Community Schools

In *Fry*, *supra*, 137 S.Ct. 743, the United States Supreme Court clarified the scope of the IDEA's exhaustion requirement. This requirement is set forth in 20 U.S.C. § 1415(l) (section 1415(l)), which provides in relevant part: "'Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].'" (*Fry*, *supra*, at p. 750 [bracketed material in original].)

"The IDEA . . . protects only 'children' . . . and concerns only their schooling. [Citation.] . . . [T]he statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her

inelegant acronyms (FAPE is one) that to the uninitiated appear to be an alphabet soup of capitalized code"].) For the convenience of the reader, we list below the acronyms used in this opinion:
1. IDEA – Individuals with Disabilities Education Act.
2. FAPE – Free appropriate public education.
3. IEP – Individualized education program.
4. ADA – Americans with Disabilities Act.

'unique needs.'" (*Fry*, *supra*, 137 S.Ct. at p. 755.) "In short, the IDEA guarantees individually tailored educational services, while [the ADA] and § 504 promise non-discriminatory access to public institutions." (*Id*. at p. 756.) "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE. [Citations.] . . . Crafted by a child's 'IEP Team'—a group of school officials, teachers, and parents— the IEP spells out a personalized plan to meet all of the child's 'educational needs.'" (*Id*. at p. 749.)

The Supreme Court stated: "Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA. We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.' We next conclude that in determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." (*Fry*, *supra*, 137 S.Ct. at p. 752, fn. omitted.)

The Supreme Court explained: "[Section] 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education [FAPE]. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiff[] . . . claim[s] that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she

6

raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required. After all, the plaintiff could not get any relief from those procedures: A hearing officer . . . would have to send her away empty-handed. . . . [T]he only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." (*Fry*, *supra*, 137 S.Ct. at pp. 754-755.)

*The Trial Court Properly Required*

*Exhaustion of Administrative Remedies*

As indicated, appellant contends that the trial court erroneously required her to exhaust administrative remedies under the IDEA. She concedes that "[t]he trial court correctly characterized the gravamen of the case as being for '***permanent injury*** caused by [District's] failure to comply with the statutory mandates of the Individuals with Disabilities [Education] Act ('IDEA')' . . . ." By this concession, appellant acknowledges that her injury was caused by District's failure to provide a FAPE. "The purpose of the IDEA is to ensure that all 'children with disabilities' receive a 'free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs.'" (*B.H.*, *supra*, 35 Cal.App.5th at p. 570.) *Fry* held that the plaintiff must exhaust administrative remedies under the IDEA where the gravamen of the complaint is to seek relief for denial of a FAPE. (*Fry*, *supra*, 137 S.Ct. at p. 752.)

Appellant, however, argues that the trial court "*incorrectly* conflated [her] *permanent injury* with 'denial of a FAPE'." Appellant explains: "[P]ersonal injuries are outside the scope of IDEA's administrative remedies because personal injuries cannot be addressed by alteration of an IEP or other administrative

mechanism available to District under IDEA. [Appellant] likely was denied a FAPE by District's failure to comply with the statutory mandates of IDEA, but she has since determined that no *education based administrative remedy* could now help her, and she therefore makes no claim for such herein. "Because [appellant's] . . . Complaint seeks compensatory damages for personal injuries but makes no claim for IDEA or FAPE related administrative remedies, . . . the exhaustion of administrative remedies . . . would serve no purpose and thus have no application to this action."

Section 1415(l) provides that, before filing a civil action, administrative remedies under the IDEA must be exhausted only if the "relief" sought in the civil action "is also available under [the IDEA]." The IDEA does not authorize an award of monetary damages for personal injuries. (*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.* (2d Cir. 2002) 288 F.3d 478, 486; *Charlie F. by Neil F. v. Board of Educ. of Skokie School Dist. 68* (7th Cir. 1996) 98 F.3d 989, 991 (*Charlie F.*), abrogated in part on another ground as stated in *Fry, supra,* 137 S.Ct. at p. 752.) "[T]he structure of the [IDEA]—with its elaborate provision for educational services and payments to those who deliver them—is inconsistent with monetary awards to children and parents. . . . This is the norm for social-welfare programs that specify benefits in kind at public expense, whether medical care or housing or, under the IDEA, education." (*Charlie F., supra,* at p. 991; see also *Sellers by Sellers v. School Bd. of City of Mannassas, Va.* (4th Cir. 1998) 141 F.3d 524, 527 ["Tort-like damages are simply inconsistent with IDEA's statutory scheme"].)

*Charlie F. by Neil F. v. Board of Education of*
*Skokie School District*

Appellant cannot circumvent section 1415(l) by electing a remedy of monetary damages. In *Charlie F.*, *supra*, 98 F.3d 989, a student's parents sued school officials and the school district under laws "provid[ing] damages for misconceived educational strategies that injure disabled pupils." (*Id.* at p. 991.) Because the complaint sought only compensatory monetary damages, parents claimed that they were not required to exhaust administrative remedies under the IDEA. The Court of Appeals rejected their claim: "Charlie asks us to stop here: he wants compensatory money damages, the IDEA does not provide this form of relief, and that is that. Things are not so clear, however. The statute [section 1415(l)] speaks of available relief, and what relief is 'available' does not necessarily depend on what the aggrieved party wants. . . . The nature of the claim and the governing law determine the relief no matter what the plaintiff demands." (*Id.* at pp. 991-992.) "Perhaps Charlie's adverse reaction to the events of fourth grade cannot be overcome by services available under the IDEA and the regulations, so that in the end money is the only balm. But parents cannot know that without asking, any more than we can. Both the genesis and the manifestations of the problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA. [¶] . . . The case is remanded with instructions to dismiss for failure to use the IDEA's administrative remedies." (*Id.* at p. 993.)

Here, as in *Charlie F.*, "the genesis and the manifestations of the problem are educational." (*Charlie F.*, *supra*, 98 F.3d at p.

993.) Appellant's complaint seeks relief for District's denial of a FAPE. It is this denial that led to her allegedly "permanent injury." (See *Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver, Colo.* (10th Cir. 2000) 233 F.3d 1268, 1274 (*Padilla*) ["our primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself"].) Since appellant's injury was due to the asserted failure to provide educational services tailored to meet appellant's TBI, the injury may be rectifiable or mitigable by the provision of appropriate educational services. "[A]t least in principle relief is available under the IDEA." (*Charlie F.*, *supra*, at p. 993; see *Nieves-Marquez v. Puerto Rico* (1st Cir. 2003) 353 F.3d 108, 124 ["Awards of compensatory education . . . remain available" under the IDEA]; *Padilla*, *supra*, at p. 1274 ["we understand 'available' relief 'to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers,' [citation], or specifically seeks"]; *K.D. by and through Carrera v. Los Angeles Unified School District* (9th Cir. 2020) 816 Fed.Appx. 222, 224 [since "damages sought were based on an alleged failure to provide a FAPE" tailored to meet child's genetic disorder, court rejected argument that "exhaustion would be futile because [plaintiff] seeks monetary damages" that are unavailable under the IDEA].)

*Appellant Cannot Avoid Exhaustion Requirement*
*by Claiming There Is No Administrative Remedy*

Appellant states that "she has . . . determined that no *education based administrative remedy* could now help her." But that determination, as well as the determination whether she in

10

fact was denied a FAPE, should be made by an impartial administrative law judge at a hearing pursuant to the IDEA. (See *B.H.*, *supra*, 35 Cal.App.5th at p. 572 ["In the event of a dispute regarding the child's FAPE, the IDEA and California law afford students, parents and the [local education agency] the procedural protection of an impartial administrative, or 'due process,' hearing"]; *Fry*, *supra*, 137 S.Ct. at p. 754 ["any decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education [FAPE]'"].)

Appellant argues that the exhaustion requirement is inapplicable because her "exacerbated brain injuries are completely non-educational." But appellant is not suing District for causing her TBI, which occurred when she fell at a cheerleading camp in San Diego. (See *ante*, at p. 2, fn. 1.) The gravamen or crux of her complaint is that District failed to provide educational services, i.e., a FAPE, tailored to meet her TBI.

*Artful Pleading Is Ineffectual*

Appellant cannot avoid section 1415(l)'s exhaustion requirement by artful pleading: "Section 1415(*l*) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." (*Fry*, *supra*, 137 S.Ct. at p. 755.) It is of no consequence that the complaint's single cause of action alleged a denial of appellant's civil rights (42 U.S.C. § 1983) based in part on District's refusal to comply with section 504 and the ADA. "[W]here the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade

11

the limited remedial structure of the IDEA." (*Diaz-Fonseca v. Puerto Rico* (1st Cir. 2006) 451 F.3d 13, 29; see also *Paul G. by and through Steve G. v. Monterey Peninsula Unified School District* (9th Cir. 2019) 933 F.3d 1096, 1101 ["Paul was required to exhaust the IDEA procedural process because his § 504 and ADA claims concern whether he was provided appropriate educational services"].)

*Disposition*

The judgment is affirmed. District shall recover its costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


TANGEMAN, J.


12

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____

Hoyt E. Hart II, for Plaintiff and Appellant.

MC Law Group and Molly Thurmond, Cyrus Khosh-Chashm, for Defendant and Respondent.